Asbestos Insulating Co. and Pennsylvania Manufacturers Association Insurance Co., Petitioners *v.* Workmen's Compensation Appeal Board (Joseph F. McGovern, Deceased, by Clare A. McGovern, Widow), Respondents.

Argued December 16, 1982, before Judge ROGERS, WILLIAMS, JR., and MACPHAIL, sitting as a panel of three.

*Earl T. Britt*, with him, *Wayne A. Schaible, Duane, Morris & Heckscher*, for petitioners.

*George W. Berkelbach, III*, with him, *Vatche Kaloustain*, for respondents.

OPINION BY JUDGE ROGERS, March 24, 1983:

This is Asbestos Insulating Company's (Asbestos) appeal from an order of the Workmen's Compensation Appeal Board, affirming a referee's decision, and placing on Asbestos and its insurance carrier liability pursuant to Section 301(c)(2) of the Pennsylvania Workmen's Compensation Act (Act)[1] for the disability and death of Joseph F. McGovern.

The facts as found by the referee on the basis of evidence adduced during four hearings between September, 1976 and March, 1978 are largely uncontested on the occasion of this appeal. Mr. McGovern, at the time of the filing of his claim petition, was a sixty-six year-old former pipe coverer and insulator who, as an employee of eleven corporate concerns including Asbestos for various periods between 1948 and 1974 and, since 1953, as a member of Local 14 of the Heat and Frost Insulators Union, engaged in the application of various insulation materials to pipes, conduits, vents and similar utilities. The materials with which Mr. McGovern regularly worked included asbestos in the form of a cement mixed at the job site and denominated variously, by those familiar with the material, as "7M" or "Blue Mud." Mr. McGovern used this Blue Mud for some twenty-five years including those periods of employment with Asbestos. The procedure performed on numerous occasions by Mr. McGovern necessary to accomplish the mixing of Blue Mud also necessitated the inhalation of asbestos particles and fibers. On November 14, 1975 Mr. McGovern became totally disabled as a result of asbestosis and malignant mesothelioma; a cancer of the membrane which invests the lungs—conditions frequently associated with exposure to airborne asbestos and, in the uncontradicted opinion of the claimant's expert medical witness,

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §411(c)(2).

caused in Mr. McGovern's case by the hazards of his employment as a pipe insulator. Mr. McGovern died of these conditions complicated by bronchial pneumonia on November 13, 1976, during the pendency of these proceedings.

Asbestos confines its appeal to two narrow issues. Noting that occupational diseases are compensable under the Act "only with respect to the disability or death of an employee which results in whole or in part from the employee's exposure to the hazard of occupational disease after June 30, 1973 . . . ," Section 301(c)(2) of the Act, 77 P.S. §411(2), Asbestos argues that the referee's necessary factual findings of exposure to an asbestos hazard by Mr. McGovern after June 30, 1973 and of a causal relationship between that exposure and the claimant's disability and death are not supported by substantial evidence. The pivotal findings on the issue of exposure to asbestos after June 30, 1973 are as follows:

11. Claimant was employed by Defendant, Asbestos Insulating Company, Inc., during the months of July, August and September of 1973 and worked 21 hours during July, 101 hours during August and 48 hours during September. Most of this time was spent at the plant of Merck, Sharp and Dohme in West Point, Pennsylvania.

12. Claimant's work at the Merck, Sharp and Dohme plant consisted primarily of doing "patch work" which can be described as "trimming the job" (neatly cutting away old insulation in order to make a new application) and applying new insulating materials and cements to piping and flanges which needed repair or had been damaged.

13. The cement used by the Claimant while doing his "patch work" at Merck, Sharp and

Dohme in July, August and September of 1973 was 7M asbestos mud. . . .

. . . .

15. While performing "patch work," claimant would beat the old insulation materials while trimming the job and would breathe asbestos when emptying blue mud from the bag into the mixing box.

16. Claimant, Joseph F. McGovern, was exposed to the hazard of asbestos while working at the plant of Merck, Sharp and Dohme at West Point, Pa., for the Defendant, Asbestos Insulating Company, Inc., during the period between July 1973 and September 1973.

Asbestos contends that findings number 13 and 16 reproduced above and having to do with the presence at the Merck, Sharpe and Dohme job site of 7M or Blue Mud are not supported by substantial evidence. The claimant testified on direct examination concerning this point during the hearing conducted on September 2, 1976, as follows:

Q: Can you recall specifically what your assignment was during July of 1973 at Merck, Sharp & Dohme?

A: Yes, I was doing patch work.

. . . .

Q: What sort of materials were you using?

A: Magnesia. I say magnesia, but I shouldn't say that. There was a chance that I could have been using magnesia. This was a sectional covering. I am sure that I was using, in all likelihood, 7M Asbestos mud.

Mr. Britt: [counsel for Asbestos]: I am going to object to that, sir, and move to strike. I don't think there has been proper foundation laid there.

The Referee: We are going to let it stand. You will have an opportunity to cross-examine him, and I am assuming that Counsel is going to later identify what the substance is.

. . . .

Q: Mr. McGovern, you have testified that you were sure that the material you were using was 7M or Blue Mud. Could you tell us what you mean by 7M or Blue Mud?

. . . .

Q: To the best of your knowledge, what specifically is Blue Mud?

A: It is a rock that is ground up. It is raw asbestos in its rawest form as we would use it.

Q: What does it look like?

. . . .

The Referee: Were you using any of that mud at Merck, Sharp & Dohme?

The Witness: Yes.

Asbestos does not now contend that the referee's rulings with respect to the admissibility of this evidence were in error and, indeed, Asbestos appears to concede that this testimony, standing alone, would lend sufficient support to the disputed finding. However, Asbestos contends that the referee erred in crediting this testimony because of an arguably inconsistent account of the work performed at Merck, Sharp & Dohme given by Mr. McGovern during a deposition held some four months earlier on April 28, 1976; because at the time of the September 2, 1976 hearing Mr. McGovern was concededly suffering from the effects of his condition and from the chemical and radiological means employed in its treatment; because Mr. McGovern explained the inconsistencies in the two testimonial versions with reference to intervening con-

versations he had initiated with co-workers during the relevant period; and because a defense witness, Mr. Thomas Rohrer, the claimant's supervisor during the relevant period and a major stockholder of Asbestos, testified on the basis of his personal observations and records made in 1973 that no asbestos or Blue Mud or 7M was ever delivered to the job site at Merck, Sharp & Dohme.

Each of the considerations now proffered by Asbestos and summarized above, is pertinent solely to the issue of the weight to be accorded to Mr. McGovern's final assertion that he used Blue Mud at Merck, Sharp & Dohme while employed by Asbestos after June 30, 1973. Of course, the assessment of evidentiary weight and credibility is within the exclusive province of the referee and we may not disturb the referee's findings if the evidence supportive of those findings is such that a reasonable mind might accept as adequate. *Workmen's Compensation Appeal Board v. Auto Express, Inc.*, 21 Pa. Commonwealth Ct. 559, 346 A.2d 829 (1975). Findings number 13 and 16 are adequately supported.

Asbestos primarily argues on the occasion of this appeal that the evidence relied on by the referee as establishing a causal relationship between the asbestos exposure after June 30, 1973 and the claimant's disability and death was insufficient. The crucial findings are

36. Claimant, Joseph F. McGovern suffered from malignant mesothelioma and had asbestosis in the left lung.

. . . .

41. The diseases suffered by Claimant, Joseph F. McGovern (malignant mesothelioma and asbestosis) were directly related to Claimant's employment as a heat and frost insulator

and his numerous and continued exposure to asbestos between 1948 and September of 1973.

. . . .

43. Claimant's disability resulted from the pulmonary disease of asbestosis and malignant mesothelioma which were caused in part by his last exposure to asbestos in the period between July and September of 1973.

44. The claimant's permanent and total disability was a result of his cumulative exposure to asbestos over the entire course of his employmet in the pipe covering industry, including the period after 6/30/73.

45. The claimant's pulmonary diseases, asbestosis and malignant mesothelioma, were aggravated by his exposure to the hazard of asbestos between July and September of 1973.

On this issue of causality, the claimant's medical witness, Dr. Mario J. Saldana, M.D., a professor of Pathology at the Hahnemann Medical College and Hospital, testified as follows:

Q: Doctor, I want you to assume several facts.

I want you to assume that Mr. McGovern was a pipe coverer and insulator who worked in the insulation field since 1948; I want you to assume also that Mr. McGovern was exposed to asbestos on numerous occasions between 1948 and 1973.

Mr. Weber: When, in 1973, George?

Q: During June, July, August, and September, 1973. Based upon those assumptions and based upon your review of the [histological] slides in this case, do you have an opinion based on a reasonable degree of medical certainty

whether the disease from which Mr. McGovern was suffering was related to his work?

[Objections by defense counsel]

A: Yes. Mr. McGovern's disease was related to his work.

. . . .

Q: Could Mr. McGovern's disease that you discussed, could that disease have been caused totally or in part by an exposure to asbestos during June, July, August and September, 1973.

A: Yes, partly, yes.

Q: What do you mean by that?

A: Because this man already has pulmonary fibrosis and asbestosis and pleura mesothelioma, by being exposed to more asbestos it is conceivable that this contributed to the progression of his disease.

. . . .

Q: Doctor, I want you to assume that Mr. McGovern was a pipe insulator and pipe coverer since 1948; I want you also to assume that between 1948 to September of 1973 Mr. McGovern had numerous contacts and exposures to the substance asbestos; based upon your review of the [histological] slides in this case, do you have an opinion based upon a reasonable degree of medical certainty as to whether Mr. McGovern's death was in part or in whole caused by his employment as an insulator.

[Objections by defense counsel]

A: The evidence shows to me very clearly that this man's disease, malignant mesothelioma, was associated to his history of asbestos exposure.

Q: What do you mean by his death that it was associated with his history of asbestos exposure; describe what you mean by that?

A: I mean that the development of that malignancy in this man was determined by the inhalation of asbestos. Sometimes, in the presence of a malignant mesothelioma, and a history of asbestos exposure, you might be even questioned, because asbestos bodies are not found. But in this case, it just happened that there were plenty of them in the lung, so it makes things relatively simple for the pathologist.

Our cases make clear that the statutory requirement in Section 301(c)(2) that a compensable disability or death must result in whole or in part from occupational exposure to the hazard after June 30, 1973 is satisfied by competent medical testimony that the claimant was exposed to the occupational hazard during the critical period and that the whole of the claimant's exposure caused the disability or death. *Arco Polymers, Inc. v. Workmen's Compensation Appeal Board,* 42 Pa. Commonwealth Ct. 647, 401 A.2d 609 (1979); *City of Hazleton v. Workmen's Compensation Appeal Board,* 35 Pa. Commonwealth Ct. 477, 386 A.2d 1067 (1978); *Workmen's Compensation Appeal Board & Klebick v. Commonwealth of Pennsylvania,* 19 Pa.. Commonwealth Ct. 499, 338 A.2d 758 (1975). There is no requirement that a physician be able to differentiate the causal contribution of exposure during different periods or that a physician must testify and the referee must find that exposure after June 30, 1973 played a discrete causal role in the development of the disease. Any greater requirement, given present limitations on the science of pathology and the progressive nature of many occupational diseases, would undoubtedly place an insurmountable evidentiary obstacle in the claimant's path and would, therefore, be inconsistent with the mandate that the Act be liberally construed to effect its object of compensation. The testimony of Dr. Saldana reproduced

above is sufficient to support the disputed factual findings.

Nevertheless, Asbestos contends that the referee erred because Dr. Saldana also testified somewhat unresponsively on cross-examination as follows:

Q: Doctor, do you have an opinion, based upon reasonable medical certainty at the time of your examination of the histological slides as to whether or not Mr. McGovern had an exposure to asbestos between July 1, 1973 and September 1, 1973, if that exposure aggravated the condition that he had of mesothelioma?

A. I cannot tell you exactly the dates, the period in which this particular amount of asbestos was acquired by Mr. McGovern, it is very difficult to put dates on that. So, in answering the first part of your question, looking at the histological slides, I cannot come to a conclusion on the exact dates. However, I must tell you that there was plenty of asbestos bodies in this man's lungs. One of the cases in which I have seen significant amount of asbestos. But I cannot tell you that this was from November to July of this particular period, or from January to July of another year.

In relation to the second part of your question, I do believe that the fact that Mr. McGovern was exposed to asbestos in this short period of time that you mentioned might probably have aggravated his general pulmonary status because of being exposed to the offending agent. You see, medically, we have this philosophy: whenever a harmful relationship is established like a pulmonary disease and asbestos, the medical philosophy is to prevent further aggravation of the disease by putting you away from the offending agent. The fact that he continued being

exposed to asbestos conceivably aggravated his pulmonary status. *Although I don't think that the mesothelioma was produced at all by his exposure in this second shortened period.* (Emphasis added.)

Q: What about his general physical condition then, insofar as it relates to his pulmonary function, was his pulmonary disease aggravated by any exposure between July of 1973 and September, 1973, generally, even though you might not be able to specify the degree?

A: Yes.

Asbestos contends that the referee erred in failing to infer from the emphasized portion of Dr. Saldana's testimony that the witness believed there to be no causal relationship between Mr. McGovern's disability and death and his asbestos exposure after June 30, 1973. This contention is without merit. The operative verb used by Dr. Saldana is "produced" ("I don't think mesothelioma was produced at all by his exposure in this second shortened period.") and, from the whole of the testimony, we are compelled to conclude that Dr. Saldana ascribed a different meaning to the production of mesothelioma than to the causation or aggravation of the claimant's disease. Dr. Saldana repeatedly asserted that the whole of the claimant's asbestos exposure including that occurring after June 30, 1973 caused or aggravated his condition. This is all that is necessary for compensation.

Moreover, although Dr. Saldana testified that he did not believe the mesothelioma to have been produced by the most recent asbestos exposure, the fundamental cause of Mr. McGovern's death was not mesothelioma alone but was, instead, the cancerous condition in combination with asbestosis both contributing to the immediate cause of death—bronchial pneumonia. The referee found that Mr. McGovern's dis-

ability and death were caused by both conditions and the evidence supporting the aggravative causal relationship between the claimant's asbestosis and his exposure after June 30, 1973 is unambiguous and uncontradicted. Finally, to the extent that Dr. Saldana's unwillingness to testify that recent exposure produced the mesothelioma may be inconsistent with his repeated testimony that Mr. McGovern's disability and death were caused, in part, by that exposure, such inconsistencies, as we have indicated, go only to the evidentiary weight of the testimony—a matter within the exclusive province and competence of the referee.

Order affirmed.

### Order

And Now, this 24th day of March, 1983, the order of the Workmen's Compensation Board of Review is affirmed. An appropriate judgment order will be entered.