558 A.2d 138

Joseph F. Maher, Petitioner *v.* Workmen's Compensation Appeal Board (B.P. Oil Corporation), Respondents.

Argued December 14, 1988, before President Judge CRUMLISH, JR., and Judges CRAIG, DOYLE, BARRY, PALLADINO, MCGINLEY and SMITH.

*Robert W. Maher, Dyer, Maher & Costigan,* for petitioner.

*Charles S. Katz, Jr., Swartz, Campbell & Detweiler,* for respondents.

OPINION BY JUDGE CRAIG, April 26, 1989:

Claimant Joseph F. Maher appeals from a decision of the Workmen's Compensation Appeal Board that affirmed a referee's decision disallowing his petition for benefits filed under section 302(c)(2) of The Pennsylvania Workmen's Compensation Act (Act),[1] for disability resulting from asbestosis caused by his exposure to asbestos while he was employed by B.P. Oil Corporation.

The central issue in the case is whether the claimant's proof of exposure to asbestos after June 30, 1973, coupled with his medical evidence relating to the cause of his

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411(2).

disability, was sufficient as a matter of law to meet the requirement of section 301(c)(2) that the disability result in whole or in part from exposure after that date, where the referee found as a fact, based on the testimony of the employer's medical witness, that the occupational disease was caused by exposure before that date.[2]

The facts found by the referee that are not in dispute are that the claimant worked as an insulator at the Marcus Hook Refinery from 1940 to September 30, 1978, when he retired, and, in the course of his employment, he was exposed to asbestos hazard. By 1970 only non-asbestos materials were used when new insulation was installed; however, old asbestos-containing materials still had to be removed as part of the normal duties of insulators. By February 1973 the employer had implemented safety measures to protect the workers from asbestos, namely, requiring the wearing of masks and coveralls when working with asbestos.

In late 1972 the plant physician initiated a program of examining each asbestos handler to see if he were suffering any ill effects from exposure to asbestos. Pursuant to this program, a board certified pulmonary specialist engaged by the employer first examined the claimant on January 3, 1973, and diagnosed severe extensive pleural disease due to asbestos exposure. The specialist recommended that the claimant continue working because he was not disabled. On or about March 6, 1973, the employer gave the claimant an order not to participate in the removal of old insulation and to avoid all contact with

---

[2] Our scope of review of a decision of the Workmen's Compensation Appeal Board is limited to determining whether constitutional rights were violated, an error of law was committed or necessary findings of fact were not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Universal Trucking, Inc. v. Workmen's Compensation Appeal Board (Hassell)*, 112 Pa. Commonwealth Ct. 428, 535 A.2d 722 (1988).

asbestos dust; the claimant was to police his own assignments and call any incorrect assignment to the attention of his supervisor.

The specialist continued to monitor the claimant's condition every six months from May 2, 1973, through May 9, 1978. On September 17, 1981, the specialist examined the claimant for the last time, and at that point he first diagnosed asbestosis. There had been an increase in the claimant's disability between May, 1978, and September, 1981. At that time the specialist thought that the claimant was disabled from returning to his work as an insulator, although he did not think the claimant was disabled from sedentary work.

Although the referee made no finding relating to an earlier claim, the employer has not denied the claimant's statement in his claim petition in these proceedings to the effect that he filed an earlier claim petition in August of 1976. The claimant's brief elaborates by stating that, by agreement of counsel, the similar claim of a co-worker was deemed to be a test case with regard to certain issues. After the other case was finally determined in early 1980, the claimant withdrew his original claim and filed the claim that is the subject of the present proceedings on April 7, 1980.

The claimant contends that the referee applied an erroneous legal standard in determining the claimant's burden of proof in his claim for disability benefits on the basis of occupational disease due to asbestos exposure.

The portion of section 301(c)(2) of the Act relating to the burden of proof in an occupational disease case provides:

The provisions of this paragraph (2) shall apply only with respect to the disability or death of an employe which results in whole or in part from the employe's exposure to the hazard of occupa-

tional disease after June 30, 1973 in employment covered by The Pennsylvania Workmen's Compensation Act.

The referee's crucial Finding of Fact and Conclusion of Law on this point were as follows:

13. By the time that Dr. Rudnitzky first examined Claimant prior to June 30, 1973 the damage to claimant's lungs as a result of exposure to asbestos hazard already had been done. The development of Claimant's disability thereafter was not due to Claimant's exposure to asbestos hazard after June 30, 1973. There was no causal relationship between Claimant's disability which existed as of September 17, 1981 and his exposure to asbestos hazard on or after July 1, 1973 if indeed he was exposed to asbestos hazard. Asbestosis ha[s] a latency period of twenty years or so between the relevant exposure and the manifestation of the disease as a diagnosable condition causing disability.

Finding of Fact No. 13.

2. Regardless, Claimant's exposure to asbestos hazard on and after July 1, 1973 was no[t] relevant to the development of his disabling asbestosis and there was no causal relationship between that exposure and the onset of Claimant's disability.

Conclusion of Law No. 2.

In its opinion affirming the referee's decision in this case, the board quoted from this court's decision in *Asbestos Insulating Co. v. Workmen's Compensation Appeal Board (McGovern)*, 73 Pa. Commonwealth Ct. 86, 95, 457 A.2d 1320, 1325 (1983):

Our cases make clear that the statutory requirement in Section 301(c)(2) that a compensable disability or death must result in whole or in part

from occupational exposure to the hazard after June 30, 1973 is satisfied by competent medical testimony that the claimant was exposed to the occupational hazard during the critical period and that the whole of the claimant's exposure caused the disability or death. Arco Polymers, Inc. v. Workmen's Compensation Appeal Board, 42 Pa. Commonwealth Ct. 647, 401 A.2d 609 (1979); City of Hazleton v. Workmen's Compensation Appeal Board, 35 Pa. Commonwealth Ct. 477, 386 A.2d 1067 (1978); Workmen's Compensation Appeal Board & Klebick v. Commonwealth of Pennsylvania, 19 Pa. Commonwealth Ct. 499, 338 A.2d 758 (1975). There is no requirement that a physician be able to differentiate the causal contribution of exposure during different periods or that a physician must testify and the referee must find that exposure after June 30, 1973 played a discrete causal role in the development of the disease. Any greater requirement, given present limitations on the science of pathology and the progressive nature of many occupational diseases, would undoubtedly place an insurmountable evidentiary obstacle in the claimant's path and would, therefore, be inconsistent with the mandate that the Act be liberally construed to effect its object of compensation.

The board stated that the claimant's evidence, if accepted, would satisfy the requirements of *Asbestos Insulating,* but the board said that the referee still was required to make a factual finding on the issue. In the board's view, the referee made a factual finding on this issue based on his resolving a conflict in the medical testimony by making a credibility determination, and a credibility determination could not form the basis on which the board could reverse the referee.

This court has considered a series of cases involving the interpretation of section 301(c)(2) of the Act, both in relation to asbestos hazard and to other forms of occupational disease hazard. In *Workmen's Compensation Appeal Board and Klebick v. Commonwealth,* 19 Pa. Commonwealth Ct. 499, 338 A.2d 758 (1975), a claimant who had worked underground in various coal mines from 1936 to July 17, 1973, filed a claim petition alleging total disability from occupational disease. The medical testimony from the claimant's physician was that the claimant was totally and permanently disabled due to coal workers' pneumoconiosis and that his condition was the result of his exposure to dusts while working in the coal mines. The referee granted benefits and the board affirmed. The Commonwealth, liable at that time for 75% of such benefits, appealed to this court, arguing, in essence, that the Act required direct medical testimony of the relationship between the exposure after June 30, 1973, and the disability.

This court held that the claimant's medical testimony that his total disability resulted from the *cumulative exposure* to a silica hazard during some thirty-seven or thirty-eight years in the mines ending July 17, 1973, (*i.e.,* only seventeen days after June 30, 1973) was sufficient to show that exposure after June 30, 1973, no matter how slight, was in part the cause of claimant's disability. In response to the Commonwealth's claim that a specific finding by the referee of a causal relationship between the exposure after June 30, 1973, and the disability, we held that an exact finding of the causal connection broken down by dates was not necessary.

In *Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board (Buljat),* 38 Pa. Commonwealth Ct. 466, 393 A.2d 1076 (1978), the employer appealed from a decision of the board affirming a referee's award for full disability for anthracosilicosis where the claimant,

a coal miner for thirty-two years, stopped working on July 3, 1973, and hence was exposed for only one working day after June 30, 1973. The medical testimony again was that the disability was the result of the total and cumulative exposure to dust in the mines. This court affirmed, commenting:

> [W]here, as here, we have a claim setting out an occupational disease as the basis for receiving benefits under the Act we believe it proper to carry to its logical end our holding in Workmen's Compensation Appeal Board [and Klebick] v. Commonwealth ... .

*Buljat,* 38 Pa. Commonwealth Ct. at 469, 393 A.2d at 1078.

More recently, this court considered a case presenting the identical legal issue as this case, as well as strikingly similar facts. In *Marcucci v. Workmen's Compensation Appeal Board (B.P. Oil Co.),* 98 Pa. Commonwealth Ct. 7, 510 A.2d 1262 (1986), *petition for allowance of appeal denied,* 515 Pa. 586, 589, 527 A.2d 545, 548 (1987), the claimant was the widow of an employee who had worked for thirty years at the same Marcus Hook Refinery involved in this case and who died from mesothelioma cancer caused by asbestos exposure. His last day of work was July 7, 1974. Among the referee's specific findings were:

> 11. Decedent doed [sic] from metastatic mesothelioma which was caused by his exposure to asbestos hazard in the course of his employment with Defendant and its' [sic] predecessors at the Marcus Hook Refinery; however, said malignant mesothelioma existed in decedent's body before June 30, 1973.
>
> . . . .

13. The Referee specifically accepts the testimony of Bernard Mason, M.D. and finds that decedent's continued exposure to asbestos hazard after June 30, 1973 did not affect the progress of his disease of malignant mesothelioma in any way.

*Marcucci*, 98 Pa. Commonwealth Ct. at 12, 510 A.2d at 1264. From those findings the referee concluded that the claimant had not met her burden of proving by evidence acceptable to the referee that the decedent had any relevant exposure to asbestos hazard in the course of his employment after June 30, 1973. The board affirmed.

This court reversed, agreeing with the claimant that the referee and the board had misconstrued the claimant's burden with regard to exposure after June 30, 1973:

We have never held that recovery under the Act for an occupational disease requires that the exposure after June 30, 1973 be established as *a causative factor*, nor could such a ruling be sensibly made in light of the improbability in occupational disease cases of pinpointing the precise period or time in a long-term exposure when in a cancer case the 'hit' or onset of malignancy or the metastasis began or became terminal. The fact that medical science is necessarily inexact in such ·cases is the very reason why asbestos diseases and cancer from asbestos exposure are, and can only be, compensable as occupational diseases rather than as regular injuries under Section 301(c)(1), 77 P.S. §411(1). It must be remembered that occupational disease statutes, the first in 1937, have all allowed recovery for exposures experienced prior to their enactment dates; and, in our view, this is true of that portion of Subsection (c)(2), quoted above, which was added to Section 301 by the Act

of October 7, 1972, P.L. 930, requiring exposure to the hazard after June 30, 1973.

In our view the requirement of *exposure* after June 30, 1973 is jurisdictional to establish a compensable occupational disease under Section 108(1) of the Act, but *we do not believe that proof of the significance of such jurisdictional exposure is required.* Occupational disease recoveries are based upon exposure and upon the event when that exposure caused *disability,* and not upon what precise period of exposure caused the disease. The date of disability in an occupational disease case is the date of injury for the purpose of fixing liability.

*Marcucci,* 98 Pa. Commonwealth Ct. at 13-14, 510 A.2d at 1264-65 (emphasis added; footnotes omitted).

The employer here acknowledges *Marcucci,* but contends that *Marcucci* constituted a departure from this court's treatment of this issue in its other cases, where, by the employer's characterization, the court required a showing of some causal relation, however slight, between the exposure after June 30, 1973, and the disability. The employer also argues separately that the referee's finding that the claimant's occupational disease was *not* the result of exposure to asbestos hazard after June 30, 1973, is supported by substantial evidence in the record and hence may not be disturbed on appeal. As noted above, the board affirmed on the basis of the second argument. However, the two issues are not separate; rather they are different phrasings of the same issue.

There is no meaningful distinction between the *Buljat* situation, where the evidence establishes that a claimant had a single day's exposure to a hazard after June 30, 1973, and a doctor recites that the claimant's disability resulted from an occupational disease caused by the whole of the claimant's exposure, and the *Marcucci* situ-

ation, where the employer concedes that the claimant's disability or death resulted from disease caused by exposure in the course of his employment and this court characterizes the exposure after June 30, 1973, as being "jurisdictional." To infer from the first situation that the doctor meant by his testimony that the disease or its severity definitely was caused to some extent by the single day's exposure after June 30, 1973, is to infer too much. *Marcucci* simply clarifies the consistent position of this court, from *Asbestos Insulating Co.* through *Klebick* and *Buljat* to the present: section 301(c)(2) recognizes that in an occupational disease case a medical witness *cannot* specify what precise period of exposure caused the disease, and hence does not require proof of a fact that cannot be proved. That was the "insurmountable evidentiary obstacle" referred to in *Asbestos Insulating Co.* Rather, where medical science is incapable of proving the matter one way or the other, all that section 301(c)(2) can and does require is proof that the disease was caused by exposure to a hazard and proof of exposure after June 30, 1973, so that the exposure after the critical date may have caused the disease in whole or in part or affected its progress. This approach allows for a much more rational interpretation of medical testimony to the effect that a disease was caused by the whole of the claimant's exposure, including brief exposure after June 30, 1973.

The above analysis reveals the fallacy in the referee's finding as a fact that the claimant's disease was caused by exposure before June 30, 1973. The corollary to the proposition that medical science cannot establish with certainty that a disease resulting from ongoing exposure was caused in whole or in part by exposure after a particular date is that medical science cannot establish with certainty that the disease was *not* caused in whole or in part by such exposure. Where such medical uncer-

tainty is recognized as a matter of law, the referee is not free to make a factual finding completely contrary to that principle of uncertainty. The referee's making such a finding here, and the board's affirming on the basis that that finding could not be disturbed, amounts to treating a true question of law as a question of fact.

This court made essentially the same point in *Marcucci* in a slightly different way. There this court noted that the referee in that case initially made a finding that the carcinogenic "hit" had occurred before January 31, 1971. The board vacated that finding and remanded, questioning the propriety of the referee's applying that fixed injury concept in the context of an occupational disease case. Although the board later affirmed after the referee made new findings, including those quoted above, this court's reversal of the board's opinion emphasized that "a specific 'hit', or fixed injury, has no place in the occupational disease process, but is tantamount to requiring proofs which were necessary under the pre-1972 era when an accidental injury was required." *Marcucci,* 98 Pa. Commonwealth Ct. at 16, 510 A.2d at 1266.

In the present case, the testimony of the employer's medical witness, credited by the referee to establish the "fact" that the claimant's disease was caused by exposure before June 30, 1973, is nothing more than an assertion that an identifiable "hit" took place, before the specified date, without using the word "hit." Such is the only possible inference from a witness' confident assertion that exposure after that date had no effect on the origin or the progress of the claimant's disease. A referee errs as a matter of law when he or she makes a dispositive finding of fact that relates to a legal concept that is not applicable to the issue in the case. This referee did so, and the board erred in affirming on the basis that that finding could not be disturbed.

The other issues in this case may be resolved more quickly. The claimant objects to the referee's Finding of Fact No. 7, to the effect that despite a direct order to the claimant, on or before March 6, 1973, not to participate in the removal of old asbestos insulation and to avoid all exposure to asbestos dust, including a direction to the claimant to police his own work assignments and to call to his supervisor's attention any incorrect assignments, the claimant continued to place himself in a position of exposure to asbestos dust during and after March, 1973, up until the time of his retirement. Based on that finding, the referee made his Conclusion of Law No. 1: because the claimant violated direct orders by exposing himself to asbestos hazard on and after the date of the order to avoid exposure, the claimant was not in the course of his employment when he did so.

Whether an employee was acting within the course of his or her employment at the time of an injury is a conclusion of law subject to review by this court. *Pypers v. Workmen's Compensation Appeal Board (Baker)*, 105 Pa. Commonwealth Ct. 448, 524 A.2d 1046 (1987). The claimant is correct in his contention that an employer may not so easily shift the duty of protecting an employee from occupational hazards to the employee himself. The claimant's characterization of the referee's interpretation of this instruction as constituting a waiver of the employee's rights is apt. Of course, under section 204 of the Act, 77 P.S. §71, an employee may not waive his rights to compensation:

> No agreement, composition, or release of damages made before the date of any injury shall be valid or shall bar a claim for damages resulting therefrom; and any such agreement is declared to be against the public policy of this Commonwealth.

More directly, the definition of "injury arising in the course of his employment" in section 301(c)(1) of the Act, 77 P.S. §411(1), provides that such injury shall include "injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer ... ." This is not a case where an employer ordered an employee with an identified sensitivity to a particular hazard to stay away from the area of the plant where the hazard was present, and made sure that the employee had no job duties that would require his presence in that area, but the employee went there anyway and was injured. Here the employer, after identifying this claimant's physical problem, continued to assign the claimant to do work involving contact with asbestos. The record in this case contains no hint of evidence that the employer reprimanded the claimant, or declined to pay him, for performing tasks, pursuant to company orders, that clearly were in furtherance of the business of the employer but that the referee concluded were outside the scope of employment. Although the board did not reach this issue, in view of its affirmance based on credibility, the referee erred as a matter of law by concluding that when the claimant was exposed to asbestos after June 30, 1973, he was outside the scope of his employment.

The final issue relates to the circumstances of the claimant's retirement. The referee, in Finding of Fact No. 3, specifically found that the claimant retired voluntarily (noting that the claimant gave over one month's notice of his intention to retire) and that he could still do his usual job at the time of his retirement. Based on this finding, the referee concluded that the employer had rebutted any presumption to which the claimant might be entitled that his exposure to asbestos after July 1, 1973, resulted in his subsequent disability. Conclusion of Law No. 3.

In view of our conclusion above, that the claimant has met his burden in regard to causation, the referee's conclusion with regard to the applicability of the presumption in §301(e), 77 P.S. §413,[3] is moot. The claimant did not rely on that presumption to prove his case.

We do not interpret the referee's Conclusion of Law No. 3 to indicate that the referee viewed a finding of voluntary retirement to operate as an absolute bar to any later claim for disability benefits. However, the finding relating to the circumstances of the claimant's retirement will be relevant on remand to a determination of the time of disability. As the claimant points out, the employer's and the claimant's medical witnesses agree that the claimant currently is disabled from returning to his former work as a result of his occupational disease. As was emphasized in *Marcucci,* the date of disability in an occupational disease case is the date of injury for the purpose of fixing liability. *See Marcucci,* 98 Pa. Commonwealth Ct. at 14 and n.6, 510 A.2d at 1265 and n.6.

The claimant contends that he retired as soon as he turned sixty (the earliest time when he would not suffer a penalty on his pension) because his shortness of breath and other physical problems were getting worse. The employer's senior employee relations assistant at the time of the claimant's retirement, who assisted the claimant in performing the retirement procedures, testified that the claimant went through the normal retirement procedure as opposed to that involved where the retirement was the result of disabling accidental injury. However, that wit-

---

[3] Section 301(e) provides:

If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

ness also conceded that he would not be aware of a disability claim for occupational disease such as the claimant had pending in this case before his retirement, because such claims were processed through the plant dispensary. He said that he was not aware of this claimant's claim.

The referee's finding that the claimant was not disabled from doing his usual work on the date of his retirement is supported by substantial evidence in the record. Nevertheless, that finding is not inconsistent with the claimant's contention, typical in relation to a claim of progressive occupational disease, that he was experiencing progressive difficulty in doing his job. On remand, the referee should make a determination of the date of disability for the purpose of fixing the employer's liability for workers' compensation. As for the employer's conceded failure to offer the claimant ostensibly available security guard work that would have been within his physical limitations, because of the employer's belief that the claimant had withdrawn voluntarily from the work force, we see no reason to penalize the claimant for what amounts to a lack of communication between different departments of the employer.

Accordingly, the decision of the Workmen's Compensation Appeal Board in this matter is reversed, and the case is remanded to the board with instructions to remand to the referee for a determination of the date of disability and a computation of appropriate compensation benefits.

## ORDER

NOW, April 26, 1989, the order of the Workmen's Compensation Appeal Board at A-89011, dated June 13, 1986, is reversed. This case is remanded to the board with instructions to remand to the referee for a determination of the date of disability and the computation of

benefits under The Pennsylvania Workmen's Compensation Act.

Jurisdiction relinquished.

---

DISSENTING OPINION BY JUDGE DOYLE:

I respectfully dissent. Joseph Maher (Claimant), asserts that the referee applied an erroneous legal standard in determining Claimant's burden of proof in his claim for disability benefits on the basis of occupational disease due to asbestos exposure. Relative to the burden of proof in occupational disease claims, Section 301(c)(2) of The Pennsylvania Workmen's Compensation Act (Act)[1] states as follows:

> The provisions of this paragraph (2) shall apply only with respect to the disability or death of an employe *which results in whole or in part* from the employe's exposure to the hazard of occupational disease after June 30, 1973 in employment covered by the Pennsylvania Workmen's Compensation Act. (Emphasis supplied.)

The essential issue in this case, therefore, is whether Claimant was exposed to asbestos after June 30, 1973 which resulted "in whole or in part" in his disabling asbestosis. The relationship is cause and effect.

Claimant contends that the Board improperly required him to show *some* causal relationship between his exposure to asbestos particles after June 30, 1973 and his development of asbestosis. I cannot agree that this was an improper burden as the majority concludes. This Court has interpreted the language of Section 301(c)(2) on numerous occasions in the past to mean that a claimant must show that his exposure after that date contributed in *some* way to his disability, *no matter how slight. Arco Polymers, Inc. v. Workmen's Compensation Appeal Board,* 42

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411(2).

Pa. Commonwealth Ct. 647, 401 A.2d 609 (1979). A claimant can easily satisfy this requirement by introducing competent, medical testimony which shows that the claimant was exposed to the occupational hazard during the critical period, *and* that the *whole* of the claimant's exposure *caused* the disability or death. *Asbestos Insulating Co. v. Workmen's Compensation Appeal Board (McGovern),* 73 Pa. Commonwealth Ct. 86, 457 A.2d 1320 (1983). Furthermore, "[t]here is no requirement that a physician be able to differentiate the causal contribution of exposure during different periods or that a physician must testify and the referee must find that exposure after June 30, 1973 played a discrete causal role in the development of the disease." *McGovern,* 73 Pa. Commonwealth Ct. at 95, 457 A.2d at 1325. But, a claimant's failure to show *any* causal relationship between post June 30, 1973 exposure and the subsequent disability, even if it forms only some small part of the cumulative total, is fatal to his claim and in the past we have so held.

The facts as found by the referee on the basis of evidence adduced during nineteen hearings between June, 1980 and January of 1984 are as follows: Claimant worked for Employer as an insulator from 1940 to September 30, 1978, and, in the course of his employment, was exposed to asbestos hazard. By 1970, asbestos materials were no longer used at Employer's refinery, and only non-asbestos materials were used when new insulation was installed. It was, however, necessary to remove old asbestos-containing materials. By February 1973, Employer had implemented new safety measures to protect its workers from asbestos, viz., wearing masks and coveralls while working around any insulating materials.

Due to a prior diagnosis of lung disease, Claimant was given a *direct order* by his physician, on or before March 6, 1973, not to participate in the removal of the old insulation materials and to avoid any possible exposure to

asbestos dust. Claimant was told to police his own assignments, and if he was given an incorrect assignment dealing with asbestos he was to bring it to the attention of his supervisor. The referee found that, despite this direct order, Claimant continued to place himself in a position of exposure to asbestos dust after March 6, 1973 up until the time of his retirement on October 1, 1978.

The referee further found that, although Claimant reported to the nurse in charge of Employer's medical dispensary on numerous occasions in the 1970's, there was nothing to indicate that he complained of any symptoms of lung-related disability, nor was there any evidence that Claimant could not do his usual work. In short, up until the time claimant voluntarily retired on October 1, 1978, he was not disabled at all. Furthermore, the referee, relying on Employer's own medical witness, Dr. Jerome Rudnitzky, specifically made a finding (No. 10) that, "he [Dr. Rudnitzky] recommended to Claimant that Claimant continue working since he was not disabled." Claimant was first examined by Dr. Rudnitzky on January 3, 1973 at which time he found extensive pleural disease due to asbestos exposure, but the doctor did not diagnose asbestosis until September 17, 1981. Based on Dr. Rudnitzky's testimony, the referee found that Claimant's exposure, after June 30, 1973, did *not* cause his disability.

On October 1, 1978, Claimant voluntarily retired; yet, he was still capable of performing his usual job duties. At the time of his retirement, Claimant was sixty years old which was the pension age for company employees. He gave Employer over one month's notice of his intent to retire, and at no time did Claimant mention his disability as a reason for his retirement. There was further evidence, specifically found to be credible by the referee, that there was work available for Claimant, and he concluded that "claimant did not leave . . . by reason

of his disability [but] left only on the basis of a voluntary retirement . . . . Thus, [Employer] has rebutted any presumption to which claimant may be entitled that his exposure to asbestos after July 1, 1973 resulted in his subsequent disability."

Claimant relies on *Marcucci v. Workmen's Compensation Appeal Board (B.P. Oil Co.)*, 98 Pa. Commonwealth Ct. 7, 510 A.2d 1262 (1986), to support his argument that Section 301(c)(2) of the Act does not require *any* causal connection between post June 30, 1973 exposure and disability. And, as the majority points out, in *Marcucci* this Court stated:

> *We have never held that recovery under the Act for an occupational disease requires that the exposure after June 30, 1973 be established as a causative factor,* nor could such a ruling be sensibly made in light of the improbability in occupational disease cases of pinpointing the precise period or time in a long-term exposure when in a cancer case the 'hit' or onset of malignancy or the metastasis began or became terminal.[5] The fact that medical science is necessarily inexact in such cases is the very reason why asbestos diseases and cancer from asbestos exposure are, and can only be, compensable as occupational diseases rather than as regular injuries under Section 301 (c)(1), 77 P.S. §411(1). (Emphasis added and footnote omitted.)

*Id.* at 13, 510 A.2d at 1264-65. First, I believe that this statement in its application to the facts here before us misses the point. Section 301(c)(2) very clearly requires a claimant to show that "the disability . . . [has resulted] in whole or in part from the employe's exposure to the hazard of occupational disease after June 30, 1973." We should not ignore the mandate because of the difficulty of

proof. Medical testimony that Claimant already *had* the disease prior to July 1, 1973, and that (a) either Claimant was not exposed after that date, or, (b) if exposed, such exposure did *not contribute in any way to his disease,* likewise very clearly fails to meet the requirement of Section 301(c)(2). Medical testimony may be inexact in pinpointing the precise moment of *when* a claimant becomes disabled because of asbestosis; it may be, however, and I believe was in this instance, sufficiently definite to establish a period of time that did *not* contribute to Claimant's disability. And, the referee came to that same conclusion.

The referee dismissed Claimant's petition specifically concluding (No. 2) that:

2. Regardless, Claimant's exposure to asbestos hazard on and after July 1, 1973 was no[t] relevant to the development of his disabling asbestosis and there was no causal relationship between that exposure and the onset of Claimant's disability.

The Board affirmed this conclusion. How may this Court conclude to the contrary when the referee found that no medical evidence was offered to establish that it was the Claimant's total cumulative exposure, including exposure after June 30, 1973, that caused Claimant's disability. To the contrary, the unequivocal, unrebutted testimony of Dr. Rudnitzky establishes that the post June 30, 1973 hazard exposure bore no causal effect in bringing about Claimant's disability. He further testified that asbestosis has a latency period of approximately twenty years, making Claimant's exposure to the hazard after June 30, 1973 irrelevant to the progress of the disease. It is well settled that the credibility of witnesses and the weight to be accorded their testimony is within the province of the referee. *Haney v. Workmen's Compensation Appeal Board,* 65 Pa. Commonwealth Ct. 461, 442

A.2d 1223 (1982). Therefore, since the expert testimony of Employer's witness unequivocally supports the referee's findings, it should not be disturbed by this Court on appeal.

Furthermore, *Marcucci* is flawed as legal precedent when it states that "we have never held that recovery under the Act for an occupational disease requires that the exposure after June 30, 1973 be established as a causative factor" on the reasoning that medical science cannot pinpoint the precise period when, in a long-time exposure, the "hit" becomes terminal. To the contrary, we have held that *some* causation must be established. We said in *McGovern:*

> Our cases make clear that the statutory *requirement* in Section 301(c)(2) that a compensable disability . . . must result in whole or in part from occupational exposure to the hazard after June 30, 1973 is satisfied by competent medical testimony that the claimant was exposed . . . during the critical period and that the whole of the claimant's exposure caused the disability or death.

*Id.* at 95, 457 A.2d at 1325. (Emphasis added.) Further, we stated in *Arco Polymers* "[w]ith regard to his exposure to a hazard after June 30, 1973, all the Claimant was *obliged* to show was that his exposure after that date contributed to his disability, no matter how slightly." *Id.* at 649, 401 A.2d at 610. (Emphasis added.) And, in *Jones & Laughlin Steel Co. v. Workmen's Compensation Appeal Board,* 38 Pa. Commonwealth Ct. 466, 393 A.2d 1076 (1978), where the doctor testified that claimant was disabled as the result of his total and cumulative exposure, including the one day of July 3, 1973, we held that an exact finding broken down by dates is not necessary because there was at least a one day exposure post June 30, 1973. Finally, in *Commonwealth v. Workmen's Com-*

*pensation Appeal Board (Klebick),* 19 Pa. Common-wealth Ct. 499 at 502, 338 A.2d 758 at 760 (1975), we stated, "Clearly this medical testimony is sufficient to show that the exposure after June 30, 1973, no matter how slight, was in part the cause of claimant's disability. That is all Section 301(c)(2) *requires*." (Emphasis deleted in part and added in part.)

The majority, by holding that "section 301(c)(2) recog-nizes that in an occupational disease case a medical wit-ness *cannot* specify what precise period of exposure caused the disease," (slip op. at 10) erroneously concludes in effect that *no* medical evidence can be offered to prove that exposure after June 30, 1973 could not, or did not, in any way cause the disease. This is borne out by the statement (slip op. at 12) that "the testimony of the employer's medical witness, credited by the referee to establish the "fact" that the claimant's disease was caused by exposure before June 30, 1973, is nothing more than an assertion that an identifiable "hit" took place, before the specified date, without using the word "hit." Such is the only possible inference from a witness' confident assertion that exposure after that date had no effect on the origin or the progress of the claimant's disease." This is a clear invasion of not only the fact-finding province of the referee, but also the expertise of a medical witness as well. Such a conclusion moreover totally eviscerates the very language of Section 301(c)(2) that we are charged to interpret. While I readily agree that we should interpret the Act consistent with the mandate that it should be liberally construed to effect its object of compensation, *see McGovern,* to read out of meaningful existence the subject language of Section 301(c)(2) far exceeds that mandate.