640 A.2d 502

**SCHOOL DISTRICT OF PHILADELPHIA, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (POLK), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Nov. 19, 1993.

Decided April 5, 1994.

Petition for Allowance of Appeal Denied Aug. 17, 1994.

202

Ronald F. Bové, for petitioner.

Marc S. Jacobs, for respondent.

Before CRAIG, President Judge, and KELLEY, J., and DELLA PORTA, Senior Judge.

CRAIG, President Judge.

The School District of Philadelphia (employer) appeals an order of the Workmen's Compensation Appeal Board which affirmed a referee's decision granting the lifetime claim petition of the deceased claimant Harry Polk, and the fatal claim petition of his widow Harriet Polk.

## FACTS

The facts, as found by the referee, follow. Polk worked for the employer from *1971 to February 19, 1985*. On February 19, 1985, Polk experienced pain and was hospitalized and diagnosed as having lung cancer. Polk did not return to work. From March 1, 1985 to March 9, 1985, Polk was treated for right upper lobe undifferentiated cancer with bony metastases. The referee found that, on April 1, 1985, Polk notified the employer of his disease, and that it was work-related.

On June 6, 1985, Polk filed a claim petition for compensation, alleging that he sustained lung cancer because of cumulative exposure to asbestos while working for the employer. Polk died in January of 1987, while his claim petition was still in litigation. In February of 1987, his widow (claimant) filed a fatal claim petition for compensation. The referee consolidated Polk's claim petition and his widow's fatal claim petition.

From 1971 to 1976, Polk worked for the employer as a bricklayer and brick pointer and was exposed to asbestos once or twice a year. From 1976 to February 19, 1985, Polk worked for the employer as a machinist's aide and was exposed to asbestos on a regular basis while performing tasks such as "repairing and replacing motors, sewer and heat pumps, and when working with pipes insulated with asbestos." Finding of Fact No. 5.

The referee also found that 1) from *1965 to 1970*, Polk had worked at the Philadelphia Naval Yard, where he had been exposed to asbestos, 2) Polk had smoked cigarettes for thirty-five years in the following quantities: less than one-half pack a day for the first twenty-five years, and one and one-half packs during the last ten years, and 3) Polk stopped smoking in 1984.

The claimant presented the deposition testimonies of Dr. Francene Fleeger, who had been Polk's treating physician, and Dr. Eddy A. Bresnitz, who had been Polk's evaluating physician.

Dr. Fleeger, who had treated Polk in October of 1985, and had last seen him on June 13, 1986, diagnosed Polk as suffering from metastatic lung cancer which had spread throughout Polk's body. In that doctor's opinion, Polk's exposure to asbestos while working for the employer contributed substantially to Polk's illness. Dr. Fleeger further testified that "the latency period between the time of first exposure or peak exposure and the development of asbestos related cancer is *10 years* as a median, with reported lag phases up to *35 years* and shorter lag phases of one or two years." Finding of Fact No. 13. (Emphasis added.)

Dr. Bresnitz, who had examined Polk on January 27, 1986, diagnosed him as having bronchogenic carcinoma, which was metastatic to different parts of Polk's body. In that doctor's opinion both Polk's occupation at the Philadelphia Naval Yard and his employment with the employer exposed him to asbestos, which contributed significantly to his development of lung cancer. Dr. Bresnitz opined that a minimum of *ten years* of exposure to asbestos results in the development of cancer, with an average exposure time of *twenty to thirty-five years* for the development of the disease.

The employer presented the medical testimony of Dr. Paul Epstein, an evaluating physician. After reviewing Polk's medical records, that doctor testified that, in his opinion, Polk's metastatic undifferentiated carcinoma of the lung and other organs caused Polk's death. Dr. Epstein further opined that *both* Polk's exposure to asbestos and his cigarette smoking for a period of latency which began in 1965, had contributed to Polk's condition.

However, Dr. Epstein opined that, because the latency period for developing asbestos-related lung cancer is at least twenty years (Polk worked for the employer for fourteen years), Polk's exposure to asbestos while working for the employer did not cause or contribute to Polk's death.

The referee concluded that the claimant had not met the burden of proving that Polk's exposure to asbestos while working for the employer had caused his lung cancer, and dismissed both the claim petition and the fatal claim petition.

The claimant appealed the referee's decision to the board, which reversed the referee's decision and remanded the case to the referee by order dated February 1, 1991. The board relied on *Marcucci v. Workmen's Compensation Appeal Board (B.P. Oil Company)*, 98 Pa.Commonwealth Ct. 7, 510 A.2d 1262 (1986) and *Maher v. Workmen's Compensation Appeal Board (B.P. Oil Corporation)*, 125 Pa.Commonwealth Ct. 411, 558 A.2d 138 (1989), and noted that this court had decided *Maher* after the referee had rendered his decision. The board concluded that the claimant had met her burden of

proof under section 301(c)(2) of the Act, and ordered the referee to make findings of facts and conclusions of law consistent with the board's opinion, and award the claimant lifetime and fatal compensation benefits.

On remand, the referee, in an opinion dated June 29, 1992, awarded benefits to the claimant, finding that Polk's exposure to asbestos while working for the employer caused his death from lung cancer. In Finding of Fact No. 18, the referee states:

> 18. The referee has carefully considered all of the medical evidence adduced in this case and is inclined to believe that Decedent's exposure to asbestos *while in the employ of the Defendant* did not cause his disability or death from lung cancer due to exposure to asbestos. However, obedient to the mandate of the WCAB, the referee finds as fact that Decedent's exposure to asbestos while in the employ of Defendant did cause his disability and death from asbestos related lung cancer.

(Emphasis in original.)

The employer appealed the referee's decision to the board, which affirmed that decision. This appeal followed.

The employer presents the following issues on appeal: 1) whether the board erred in its February 1, 1991 and March 31, 1993 decisions, by ordering that the employer award lifetime and fatal compensation benefits to the claimant pursuant to *Marcucci* and *Maher;* 2) whether the board erred in its February 1 decision, by reversing the referee's decision; 3) whether the board erred in its March 31 decision, by concluding that the referee accepted and credited the opinions of the claimant's medical witnesses, and by concluding that substantial evidence supported the referee's decision, which the referee made on a remand order from the board; 4) assuming that the board correctly applied *Marcucci* and *Maher* to the present case, whether the board erred in concluding that the claimant met her burden of proof under Section 301(c)(2) of the Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, *as amended,* 77 P.S. § 411(2).

Our scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether any error of law was committed, or whether any constitutional rights were violated. *City of Williamsport v. Workmen's Compensation Appeal Board (Schmuck)*, 55 Pa.Commonwealth Ct. 618, 423 A.2d 817 (1980).

## ANALYSIS

### 1. The Board's Reliance on the Marcucci and Maher Decisions

The employer contends that the board erred in concluding that under this court's decisions in *Marcucci* and *Maher*, which interpret section 301(c)(2) of the Act, the claimant is entitled to lifetime and fatal compensation benefits.

Because an "injury" from occupational disease does not result from the action of a moment, the law requires that, for occupational disease compensation, the disease must be caused by exposure to a hazard in the employment in question, and that such hazard must have existed, or continued, after the jurisdictional commencement date of June 30, 1973 established by section 301(c)(2).

Section 301(c)(2) states in relevant part:

The terms "injury," and "injury arising in the course of his employment," as used in this act, shall include, unless the context clearly requires otherwise, occupational disease as defined in section 108 of this act.

. . . . .

The Provision of this paragraph (2) shall apply only with respect to the disability or death of an employe which results in whole or in part from the employe's exposure to the hazard of occupational disease *after June 30, 1973* in employment covered by the Pennsylvania Workmen's Compensation Act. (Emphasis added.)

In *Maher*, a claimant appealed from the board's order affirming a referee's decision denying benefits under section 301(c)(2) of the Act. The claimant had worked for the employ-

er from *1940 to 1978* and had been exposed to asbestos during that entire time period. The referee denied benefits based on his finding that:

> 13. By the time that Dr. Rudnitsky first examined Claimant *prior to June 30, 1973 the damage to Claimant's lungs as a result of exposure to asbestos hazard had been done.* The development of Claimant's disability thereafter was not due to Claimant's exposure to asbestos hazard *after June 30, 1973.* There was *no causal relationship* between Claimant's disability which existed as of September 17, 1981 and his exposure to asbestos hazard on or after July 1, 1981 if indeed he was exposed to asbestos hazard.

*Id.* 125 Pa.Cmwlth. 411, at 415, 558 A.2d 138 at 140 (emphasis added).

In reversing the board's decision, this court noted that 1) § 301(c)(2)'s requirement of exposure *after June 30, 1973,* is purely jurisdictional in order to establish a compensable occupational disease under the Act, and 2) proof of the significance of the jurisdictional exposure is not required. We held that although the medical evidence must show that a claimant was exposed to a hazard after June 30, 1973, which *may* have caused his occupational disease, the medical evidence need not establish that *it was the claimant's exposure to the hazard after June 30, 1973,* which resulted in his disability. Thus, even if a claimant was exposed to a hazard many years before June 30, 1973, and was only exposed to that hazard *one day* after that date, he may still recover under section 301(c)(2).

In *Maher,* this court cited *Workmen's Compensation Appeal Board and Klebick v. Commonwealth,* 19 Pa.Commonwealth Ct. 499, 338 A.2d 758 (1975) where we held that 1) where the claimant presented medical testimony that his total disability resulted from his cumulative exposure to asbestos for thirty-eight years with the employer, and 2) where the claimant's employment ended *only* seventeen days after June 30, 1973, that medical testimony was sufficient to show that the exposure after June 30, although slight, caused the claimant's disability in part. *Id.* 125 Pa.Cmwlth. at 417, 558 A.2d at 141.

In *Klebick,* we held that a referee need not make an exact finding, broken down by specific dates, as to the causal relationship between the exposure after June 30, 1973, and the disability. *Id.*

In *Marcucci,* the other case upon which the board relied in the present case, this court held that, under section 301(c)(2), a claimant need not establish that exposure after June 30, 1973 was a *causative factor* of his occupational disease. This court recognized the improbability of pinpointing the exact time that cancer becomes terminal, where a claimant has been exposed on a long-term basis. *Marcucci,* 98 Pa.Commonwealth Ct. at 13, 510 A.2d at 1264. We stated:

Occupational disease recoveries are based upon exposure and upon the event when that exposure caused *disability* (emphasis in original), and not upon *what precise period of exposure caused the disease* (emphasis added).

*Id.* at 14, 510 A.2d at 1265.

In this case the employer contends that *Marcucci* and *Maher* are distinguishable from this case because:

Unlike the defendants in *Marcucci* and *Maher,* the defendant in the instant case *conceded that decedent was exposed to asbestos after June 30, 1973 and that his death was caused, at least partially,* (emphasis added) by *an* (emphasis is original) exposure to asbestos. (Appellant's brief, p. 16.)

The employer argues that the issue in this case is whether Polk's disability or death was causally related to his work with the employer.

The employer further contends that, under Section 301(e) of the Act, 77 P.S. § 413, which entitles a claimant to a presumption that an occupational disease arose out of the claimant's occupation if the claimant proves that she was employed in a hazardous occupation immediately before the date of disability, Polk cannot recover because there was no causal relationship between Polk's exposure to asbestos while working for the employer, and his death. Apparently, the employer is arguing that Polk's asbestos-related disease was caused by his

employment with the Philadelphia Naval Yard, which occurred before his employment with the employer.

This court notes that, although the issues presented in *Marcucci* and *Maher* focus specifically on the June 30, 1973 date, and this case does not, those cases apply to the present case because those cases interpret section 301(c)(2), which requires an exposure to an occupational hazard after June 30, 1973. In addition, those cases apply to the present case not specifically because of the June 30, 1973 requirement, but rather because of this court's analysis and interpretation of § 301(c)(2) in situations where the referee made a finding, as he did here, that a claimant's disease resulted from his exposure to an occupational hazard during one time period and not another.

In the present case, in his first decision, the referee credited the testimony of the employer's medical witness. The employer's medical witness agreed with the claimant's medical witness that exposure to asbestos caused Polk's disability. However, the employer's medical witness opined that because 1) exposure to asbestos has a latency period of twenty years, 2) Polk's initial symptoms of cancer occurred in 1984, and 3) Polk started working for the employer in 1971, this was too short a period for Polk's employment with the employer to have caused his disease.

This court notes that the testimony of the claimant's two medical witnesses supported shorter latency periods for developing asbestos-related cancer. Polk was exposed to asbestos for twenty years beginning with his employment with the Philadelphia Naval Yard in 1965, and ending when he stopped working for the employer in 1985. Although the employer apparently contends that it was Polk's earlier period of exposure to asbestos that resulted in his disability, under *Maher*, where a claimant's disease resulted from cumulative exposure to asbestos, as long as a claimant is exposed to the hazard 1) after June 30, 1973, and 2) while working for the employer, which the employer concedes here, there is no medical way of pinpointing the *exact time period* which caused the claimant's disability, and a claimant need not prove exact causal connec-

tion, broken down by dates, in order to recover benefits from the employer.

Although Polk's asbestos-related work with the Naval Yard for five years (1965–1970) may have contributed to his disability, given the fact that medical science is inexact in asbestos cases, the employer cannot say that Polk's exposure to asbestos for fourteen years while working for the employer did not contribute to the disease.

Thus, the court concludes that the board did not err in concluding that under *Marcucci* and *Maher,* the claimant is entitled to lifetime and fatal compensation benefits.

### 2. The Board's Reversal of the Referee's Decision

■   The employer contends that the board erred in reversing the referee's initial decision because that decision was supported by substantial evidence.

Specifically, the employer argues that because the referee credited the employer's medical witness' testimony that asbestos-related cancer has a latency period of twenty years, and Polk's employment with the employer was too short a time period to cause his disease or death, the board could not disturb those findings because they were supported by substantial evidence.

However, in reversing the referee's initial decision, the board noted that all three medical witnesses testified that Polk's disease resulted from his exposure to asbestos. The board further noted that *Maher* does not require a medical expert to identify the causal contribution of exposure during different employment periods, as long as there is evidence that the claimant's exposure to asbestos caused or aggravated the disease.

This court notes that in *Maher* we held:
[S]ection 301(c)(2) recognizes that in an occupational disease case a medical witness *cannot* (emphasis in original) specify what *precise period of exposure caused the disease* (emphasis added), and hence does not require proof of a fact that cannot be proved. . . .   Rather, where medical science is

incapable of proving the matter one way or the other, all that section 301(c)(2) can and does require is proof that the disease was caused by *exposure to a hazard* (emphasis added) and proof of exposure after June 30, 1973, so that exposure after the critical date *may have caused the disease in whole or in part or affected its progress.* (Emphasis added.)

The above analysis reveals the fallacy in the referee's finding as a fact that the claimant's disease was caused by exposure before June 30, 1973. The corollary to the proposition that medical science cannot establish with certainty that a disease resulting from ongoing exposure was caused in whole or in part by exposure *after a particular date* (emphasis added) is that medical science cannot establish with certainty that the disease was *not* (emphasis in original) caused in whole or in part by such exposure. Where such medical uncertainty is recognized *as a matter of law,* the referee is *not free to make a factual finding completely contrary to the principle of uncertainty.* (Emphasis added.) The referee's making such a finding here, and the board affirming on the basis that that finding *could not be disturbed* (emphasis added), amounts to treating *a true question of law as a question of fact.* (Emphasis added.) *Maher,* 125 Pa.Commonwealth Ct. at 421, 422, 558 A.2d at 142, 143.

Thus, this court concludes, in accordance with *Maher,* that, because the testimony of all three medical witnesses establish that 1) Polk's disease was caused by exposure to a hazard while working for the employer from 1971–1985, 2) the exposure continued after June 30, 1973, so that 3) the exposure to the same hazard, after that date, was one which caused his disease in whole or in part or affected its progress, the board did not err in remanding the case to the referee to award compensation.

### 3. The Board's Review of The Referee's Remanded Decision

The employer contends that the board erred, in reviewing the referee's remanded decision on appeal, in concluding that

the referee accepted and credited the opinions of the claimant's medical witnesses, and that substantial evidence supported the referee's decision.

This court notes that, although the referee, in his decision after the board's remand order, stated that he was inclined to believe the employer's medical testimony that the claimant's exposure to asbestos while working for the employer did not cause his disability and death, the referee, pursuant to the board's order, which this court concluded above was proper, accepted and credited the opinions of the claimant's medical witnesses.

The employer's final contention is that, assuming *Marcucci* and *Maher* do apply to this case, the board's reliance on those cases is misplaced. However, as noted above, the board correctly relied on those cases.

Accordingly, the board's decision is affirmed.

### *ORDER*

NOW, April 5, 1994, the decision of the Workmen's Compensation Appeal Board, dated March 31, 1993, at No. A92–1929, is affirmed.

KELLEY, Judge, dissenting.

I respectfully dissent.

The majority relies upon *Maher v. Workmen's Compensation Appeal Board (B.P. Oil Corporation)*, 125 Pa.Commonwealth Ct. 411, 558 A.2d 138 (1989). I would respectfully base my dissent on overruling *Maher* for the reasons given in the dissent by Judge Doyle.

Accordingly, I would reverse the board.