510 A.2d 1262

John Marcucci, Deceased, Olga Marcucci, Widow, Petitioner *v.* Workmen's Compensation Appeal Board (B.P. Oil Company), Respondents.

8

Submitted on briefs December 9, 1985, to Judges ROGERS and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

Robert W. Maher, Dyer, Maher & Costigan, for petitioner.

Charles S. Katz, Jr., Swartz, Campbell & Detweiler, for respondent, B.P. Oil Company.

OPINION BY SENIOR JUDGE BARBIERI, June 5, 1986:

Before this Court is the appeal of Claimant, Olga Marcucci, widow of John Marcucci, deceased employee of B. P. Oil Corporation. This appeal is from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's disallowance of Claimant's petition filed under Section 301(c)(2) of The Pennsylvania Workmen's Compensation Act[1] (Act) for decedent's mesothelioma cancer death from asbestos exposure as provided in Section 108(1)[2] of the Act.

The sole issue before us here is whether the decedent's death on January 31, 1975, from metastatic

---

[1] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. 411(2).
[2] 77 P.S. §27.1 (1).

mesothelioma, admittedly an asbestos related malignancy, after 30 years of asbestos exposure until July 7, 1974, his last date of employment in the hazard, is compensable under The Pennsylvania Workmen's Compensation Act where the medical testimony attributes the onset of the cancer to a date prior to June 30, 1973; and the medical witnesses are unable to specify that any influence on the death is attributable to the exposure during the period June 30, 1973 and July 7, 1974.[3] The portion of Section 301(c)(2) under interpretation here reads:

> The provisions of this paragraph (2) shall apply only with respect to the disability or death of an employe which results in whole or in part from the employe's exposure to the hazard of occupational disease after June 30, 1973 in employment covered by The Pennsylvania Workmen's Compensation Act.

---

[3] The medical testimony of Claimant's medical witness, J. Frederick Laucius, M.D. and that of the impartial physician, Bernard A. Mason, M.D., is substantially to the effect that when the asbestos exposure caused the cancer could not be determined; that the "lag time" for mesothelioma is lengthy, averaging 30 years (R.R. 185a); that given that the cancer onset pre-dated June 30, 1973, it is unlikely that the exposure after June 30, 1973 contributed to decedent's illness (R.R. 190a). Dr. Mason whose testimony was relied upon by the referee testified that it was impossible to say "exactly which exposure, what decade of exposure caused the disease" (R.R. 191a). His report, made part of the record, concludes:

> In summary, it can be said with a reasonable degree of medical certainty that Mr. Marcucci's work with asbestos over a thirty year period was a cause of his malignant mesothelioma. It is very likely that heavy asbestos during the 1940's, 1950's and 1960's was more important in the subsequent development of his malignant disease than any exposure that he received in the 1970's. However, it is impossible to say precisely what specific asbestos exposure caused the development of his malignant disease.

Claimant filed under the Act but also under the Occupational Disease Act.[4] Upon appeal from disallowances under both acts, the Board remanded to have Claimant elect under which act she would proceed. On the remand, upon her election to proceed under The Pennsylvania Workmen's Compensation Act, the referee again disallowed benefits with no additions to the record. The ensuing appeal to the Board resulted in the Board's decision to vacate the key finding of the referee and again remand for the appointment and testimony of an impartial physician. The vacated finding, No. 8, reads:

> 8. The Referee accepts the testimony of Claimant's physician, J. Frederick Laucius, M.D., that Claimant's carcinogenic 'hit' had occurred prior to January 31, 1971. Any exposure which Claimant may have had to asebstos [sic] hazard after the time of the carcinogenic 'hit' had no effect on the development of his metastic [sic] mesothelioma which would have progressed to the point of death on January 31, 1975 regardless of any further exposure to asbestos hazard.

The Board's comments in its opinion dated October 9, 1980, include the following:

> It can be seen from the aforesaid examination of the testimony of the sole physician testifying, that the finding of the referee in finding of fact # 8, concerning the 'hit' is not based upon the record, . . . It is doubted whether a referee, in an occupational disease matter, is authorized to do, what he has done in this case, apply a basic compensation concept, such as a 'hit', or fixed injury in the occupational disease process, to an occupational disease matter. The aforesaid act in

---

[4] Act of June 21, 1939, P.L. 566, *as amended*, 77 P.S. §§1201-1603.

Section 311, where it speaks about notice equates 'injury' in cases of occupational disease as meaning disability resulting from occupational disease. Decedent, because he worked until July 7, 1974, displayed no disability for workmen's compensation purposes. *Jones & Laughlin Steel Corp. vs. Workmen's Compensation Appeal Board,* 393 A.2d 1079 (Cmwlth. C., 1978). Significantly, also, Section 301(c)(2) of the aforesaid act which defines 'injury' as applying with respect to disability or death of an employee which results in whole or in part from the employee's exposure to the hazard of occupational disease after June 30, 1973.

Finding of fact # 8 is hereby deleted as not being supported by the record. With said deletion, the conclusions of law are invalid as well as the order.

With the said deletions, the determination of the referee is not complete. There must be a finding whether decedent's death from the occupational disease, as defined in Section 108(1) of said act, of cancer, was the result of decedent's exposure to asbestos in employment.

The determination of the referee is hereby set aside and this case is remanded to the referee for the appointment of an impartial physician with sufficient expertise to determine whether or not the death of decedent from cancer was the result of his exposure to asbestos at work, and, if so, to identify the exposure that resulted in said death. Said physician shall examine the record and prepare a report and appear before the referee for examination by the referee and respective counsel.

Upon this remand the testimony of Bernard A. Mason, M.D., appointed impartial physician testified, and

12

pursuant to Section 420 of the Act, 77 P.S. §831, Dr. Mason's report was made part of the record. The referee again disallowed benefits and the Board affirmed. It is the appeal from this order that is presently before us.

Among the referee's findings affirmed by the Board are the following:

8. A hazard of asbestos exposure existed throughout decedent's period of employment at the Marcus Hook Refinery although said hazard was substantially reduced in the last 4 years of his employment.

9. Decedent was exposed to asbestos hazard both before and after July 1, 1973.

. . . .

11. Decedent doed [sic] from metastatic mesothelioma which was caused by his exposure to asbestos hazard in the course of his employment with Defendant and its' predecessors at the Marcus Hook Refinery; however, said malignant mesothelioma existed in decedent's body before June 30, 1973.

12. By the time the diagnosis of metastatic mesothelioma was made in Claimant in July, 1974, no life saving treatment could be rendered to him. Thus, as a result of the development of the initial malignancy and in the absence of timely diagnosis and rendering of appropriate care, it was inevitable that decedent would die.

13. The Referee specifically accepts the testimony of Bernard Mason, M.D. and finds that decedent's continued exposure to asbestos hazard after June 30, 1973 did not affect the progress of his disease of malignant mesothelioma in any way.

Among the referee's conclusions of law are the following:

1. There was no causal relationship between decedent's exposure to asbestos hazard in the course of his employment with Defendant after June 30, 1973 and his death as a result of metastatic mesothelioma.

2. Decedent's death was not related to his employment with Defendant after June 30, 1973.

. . . .

4. The Referee accepts as credible the testimony of his impartial physician, Bernard A. Mason, M.D. and also accepts the opinion of Claimant's medical expert, J. Frederick Laucius, M.D. to the extent that it does not differ from the opinions expressed by Dr. Mason. *Thus, Claimant has failed to meet her burden of proving by evidence acceptable to the Referee that decedent had any relevant exposure to asbestos hazard in the course of his employment with Defendant after June 30, 1973.* (Emphasis added.)

We agree with Claimant's contention that the referee and Board have misconstrued the Claimant's burden of proof as to exposure after June 30, 1973. We have never held that recovery under the Act for an occupational disease requires that the exposure after June 30, 1973 be established as a causative factor, nor could such a ruling be sensibly made in light of the improbability in occupational disease cases of pinpointing the precise period or time in a long-term exposure when in a cancer case the "hit" or onset of malignancy or the metastasis began or became terminal.[5] The fact that medical science is necessarily inexact in such cases is the very reason why asbestos diseases and cancer from asbestos exposure are, and can only be, compensable as occupa-

---

[5] See Footnote 3 above.

tional diseases rather than as regular injuries under Section 301(c)(1), 77 P.S. §411(1). It must be remembered that occupational disease statutes, the first in 1937, have all allowed recovery for exposures experienced prior to their enactment dates; and, in our view, this is true of that portion of Subsection (c)(2), quoted above, which was added to Section 301 by the Act of October 7, 1972, P.L. 930, requiring exposure to the hazard after June 30, 1973.

In our view the requirement of exposure after June 30, 1973 is jurisdictional to establish a compensable occupational disease under Section 108(1) of the Act, but we do not believe that proof of the significance of such jurisdictional exposure is required. Occupational disease recoveries are based upon exposure and upon the event when that exposure caused *disability*, and not upon what precise period of the exposure caused the disease. The date of disability in an occupational disease case is the date of injury for the purpose of fixing liability.[6] Of even greater significance in this case, as Claim-

---

[6] In *McIntyre v. Lavino & Co.*, 344 Pa. 163, 25 A.2d 163 (1942), our Supreme Court, speaking of the Occupational Disease Act of 1937, stated:

Occupational diseases are, from a legal standpoint, peculiar in this—that they arise, not from an accident or event happening at a precise moment, but from a day by day exposure to unhealthful conditions over an extended period; the exact time of their origin is necessarily obscure and their insidious progress is not revealed until, frequently after a long interval, the disability which they create manifests itself. In the case of accidents compensable under the Workmen's Compensation Act the accident and the damage resulting therefrom, the cause and the effect, are usually determinable immediately and they are practically simultaneous. But, because in disability arising from an occupational disease both cause and effect are protracted and a long interval is apt to elapse between the exposure and the disability, it becomes necessary to fix a point

ant points out, are the terms of Section 301(e) which creates a presumption of causal relationship of an occupational disease to the employment upon simply showing that "at or immediately before the date of *disability* [the employee] was employed in any occupation or industry in which the occupational disease is a hazard. . . ." Of course, this presumption is not conclusive, but it does create a causal relationship factually dating back to the exposure. We question whether the presumption is rebutted by medical testimony that exposure in this case after June 30, 1973 was "unlikely" a cause of the death,[7] particularly where other medical testimony finds it impossible to pinpoint when the disease actually

---

of time at which the injury which is the subject of compensation shall be deemed to arise and the right to compensation accrue. Accordingly the Occupational Disease Compensation Act of 1937 provides, section 3, that 'The date when the disability occurs from occupational disease shall be deemed to be the date of injury or accident.' Thus it makes the occurrence of the disability the event which constitutes the compensable injury, although the disability is necessarily preceded by an exposure and an occupational disease of which it is the culmination.

Disability in the instant Act is also synonymous with injury as indicated in Sections 311 and 315, respectively, 77 P.S. §631 and §602, wherein it is stated: "The term 'injury' in this section means, in cases of occupational disease, *disability* resulting from occupational disease." (Emphasis added.)

[7] Dr. Mason testified:

Q. And is it for that reason that you said in your report that it is highly unlikely that Mr. Marcucci's exposure to asbestos during his last few years of work contributed in any way to the development of a tumor?

A. That is why I said that in the report. I think it's unlikely that that exposure in that—I think it was there already. I think it's *unlikely* that that exposure in the last year or two contributed to his illness. (Emphasis added.)

did become critical or the "hit" took place.[8] We are mindful here, as the Board was in its decision of October 9, 1980, quoted above, that a specific "hit", or fixed injury, has no place in the occupational disease process, but is tantamount to requiring proofs which were necessary under the pre-1972 era when an accidental injury was required.[9] In fact, in *Workmen's Compensation Appeal Board (Klebick) v. Commonwealth,* 19 Pa. Commonwealth Ct. 499, 338 A.2d 758 (1975) where claimant's exposure after June 30, 1973 was only 17 days, to July 17, 1973, we specifically rejected the theory advanced here successfully before the Board that there must be medical testimony establishing the relationship between the post-June 30, 1973 exposure and the claimant's disability. We there stated:

> The Commonwealth argues that the referee and the Board committed an error of law when they awarded the claimant compensation without evidence on the record of the causal relationship between the exposure to the hazard of an occupational disease occurring after June 30, 1973, and the claimant's disability. In essence, they say the Act requires direct medical testimony of the relationship between the post June 30,

---

[8] Dr. Mason testified:

Q. Would you agree that it is impossible to say precisely which asbestos exposure caused Mr. Marcucci's disease?

A. You mean temporally or—

Q. Temporally—

A. —or do you mean quantitatively?

Q. Temporally?

A. *It's impossible to say exactly which exposure.*

Q. What about *quantitatively?*

A. *It's also impossible to say.* Low dosages of exposure can clear cause disease over time. (Emphasis added.)

[9] See Footnote 6, above.

1973 exposure and the claimant's disabililty. We disagree with this reading of the statute.

As in *Klebick*, we have here an exposure to asbestos throughout the claimant's employment, with a finding that the decedent "was exposed to asbestos hazard both before and after July 1, 1973." The medical testimony in *Klebick* was that the total exposure caused the disability.

In *Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board (Buljat)*, 38 Pa. Commonwealth Ct. 466, 393 A.2d 1076 (1978) claimant worked only one full day after June 30, 1973, and yet we rejected the contention that there must be established a causal relationship between the one day and claimant's disability from total exposure prior thereto. And in *Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board (Speelman)*, 41 Pa. Commonwealth Ct. 223, 399 A.2d 444 (1979) we sustained recovery under the 1972 Act where there were only three days of exposure after June 30, 1973.

In *Asbestos Insulating Co. v. Workmen's Compensation Appeal Board (McGovern)*, 73 Pa. Commonwealth Ct. 86, 457 A.2d 1320 (1983), where there was, as there is here, a death from metastatic mesothelioma induced by exposure to asbestos, and where the exposure after July 1, 1973 continued until September 1, 1973, we stated:

> There is no requirement that a physician be able to differentiate the causal contribution of exposure during different periods or that a physician must testify and the referee must find that exposure after June 30, 1973 played a discrete causal role in the development of the disease. Any greater requirement given present limitations on the science of pathology and the progressive nature of many occupational dis-

eases, would undoubtedly place an insurmountable evidentiary obstacle in the claimant's path and would, therefore, be inconsistent with the mandate that the Act be liberally construed to effect its object of compensation.

We note that the effect of the exposure upon the onset of disability and the death in *McGovern* was expressed in probabilities.

We conclude, in light of those provisions in the act having to do with occupational diseases and our decisions interpreting the acceptable nature of Claimant's exposure following June 30, 1973 that, as the Board indicated in its decision of October 9, 1980, the "hit" or fixed injury theory adopted here by the referee and Board is inconsistent with the nature and statutory concepts of occupational diseases as contained in the statutes and in the decisions of our Courts; that the period of exposure after June 30, 1973 required in Section 301(c)(2) is jurisdictional for the purpose of allowing liability under the Act rather than under the less beneficent provisions of the Occupational Disease Act, but that it is clear error to base a disallowance on the failure of proof that the exposure after June 30, 1973 was more effective in causing the disability and death than was any other period in the total exposure,[10] particularly

---

[10] In our recent case of *Reynolds Mfg. Co. v. Workmen's Compensation Appeal Board (Collins)*, 93 Pa. Commonwealth Ct. 488, 502 A.2d 290 (1985), we deemed sufficient medical testimony, in conjunction with claimant's lay testimony, the following:

. . . .

A. Well, it may well be that the majority of his exposure was in the foundry but if he was exposed to some sand dust in the steel fabricating business, that would be a contributory factor in his total problem. And what that means is that I can't separate the exposure from one part of his life from that in another part of his life and say it's only because of part of it. I have no way to make that kind of distinction.

when no other period is designated by the medical testimony as a precise exposure period which can be pinpointed as the cause for the disease, disability and death.

Accordingly, we will reverse the Board's order on the basis of the admittedly valid findings of the referee, Nos. 2, 5, 8, 9 and 11,[11] on which findings we hold that benefits should be awarded to Claimant, Olga Marcucci, as surviving widow of John Marcucci, deceased employee. The record is remanded for an order consistent herewith.

ORDER

Now, June 5, 1986, the order of the Workmen's Compensation Appeal Board as of No. A-84915, dated May 4, 1984, is reversed and the record is remanded for an order consistent with the foregoing opinion, awarding benefits as provided in The Pennsylvania Workmen's Compensation Act to Olga Marcucci for the death of her husband, John Marcucci.

Jurisdiction is relinquished.

---

[11] Those of the enumerated findings of fact not quoted above are as follows:

2. The cause of the death of John J. Marcucci was metastatic mesothelioma, a form of cancer of the lung lining.

5. The last date of employment of decedent at his occupation was July 7, 1974.