601 A.2d 465

**ODD FELLOW'S HOME OF PENNSYLVANIA
and PMA Insurance Company, Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL
BOARD (COOK), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted March 29, 1991.

Decided Dec. 27, 1991.

Joseph C. Phillips, for petitioners.
James F. Carl, for respondent.

Before PALLADINO and BYER, JJ., and BARBIERI, Senior Judge.

BYER, Judge.

Odd Fellows Home of Pennsylvania and its insurer, PMA Insurance Company (collectively, Odd Fellows) appeal an order of the Workmen's Compensation Appeal Board (WCAB) affirming a referee's grant of total disability benefits to Barbara J. Cook. We affirm in part and reverse in part.

On February 11, 1988, while employed as a nursing assistant at Odd Fellows, Cook and another nursing assistant were transferring a patient to a wheelchair when the patient's legs "gave out", and they were forced to place her on the floor and lift her into the chair from that position. Cook felt a pull in her lower back, and immediately reported the incident to her supervisor, Andrea Henney, the day-shift charge nurse, who filled out an incident report. Cook returned to her duties and finished the remainder of her shift. Cook experienced no pain for approximately two weeks, after which pains began to radiate from her back down the side of her leg (20a).

From February 11, 1988 until June 7, 1988, Cook continued working a full schedule and never missed a day because of back or leg pain. Her few absences were the result of stomach pain and various other abdominal problems unrelated to the work incident. (30a–31a, 36a, 59a–60a).

On April 18, 1988, in addition to her full-time employment at Odd Fellows, Cook took on a part-time nursing assistant position with the Polyclinic Medical Center. At Polyclinic, Cook worked a four-hour shift, three days per week and every other weekend. Cook has worked at Polyclinic continuously from April 18, 1988 and still retains this position.

On June 7, 1988, Bernard Zeliger, D.O., examined Cook for her back and leg pain. He diagnosed a herniated disc in the lower back, extending centrally and to the right, causing the leg pain (80a). An MRI substantiated this diagnosis.

On June 8, 1988, Cook informed Christine Leonard, the director of nursing, that Dr. Zeliger had examined her because of her leg pain. Cook presented Ms. Leonard with two separate notes from Dr. Zeliger; one indicated that she had low back pain and severe pain radiating down her leg, and the other stated that she could return to work (61a). Ms. Leonard testified that although one of Dr. Zeliger's notes authorized Cook's immediate and unrestricted return to duty, she questioned whether Cook should resume her full work load with the severe pain described in the other note. Therefore, Ms. Leonard asked Cook to return to Dr. Zeliger for another note, specifying whether Cook's duties should be restricted in any way. Cook left to retrieve the note, but neither returned to work nor contacted Odd Fellows.

As a result, on June 13, 1988, Odd Fellows terminated Cook pursuant to its established policy that employees who do not report for work or call in for three consecutive days are considered to have voluntarily resigned.

Subsequently, Dr. Zeliger called Ms. Leonard at Odd Fellows and informed her that the note he had provided, stating that Cook could return to work, was incorrect and that Cook was subject to work restrictions. However, by this time,[1] Cook's employment at Odd Fellows had ended. (Referee Finding of Fact 13).

1. There is some dispute regarding the timing of this telephone communication; however, the referee's finding of fact 13 states:

When the claimant returned to work with the defendant on June 8, 1988, Ms. Leonard advised the claimant that she would need a doctor's slip indicating whether the claimant had any type of restrictions. Subsequently, the doctor's office called the Odd Fellows Home and told them that the doctor's certificate had been completed incorrectly and that the claimant did have restrictions. In the meantime, the defendant had terminated the claimant's employment because of a policy whereby an employee is considered to have voluntarily resigned if they do not call in and do not show up for work on three consecutive days.

It is clear from this finding, that whatever the precise date of the phone call, the referee determined that it was made sometime after the three-day grace period of Odd Fellows' employment policy had expired. There is substantial evidence on the record to support this finding.

On July 5, 1988, Cook filed a claim petition alleging that she was disabled as a result of the February 11, 1988 incident. Following hearings at which both parties presented testimony and documentary evidence, the referee awarded Cook total disability compensation for the period she did not work full-time, June 8, 1988 through July 10, 1988, as well as reimbursement for medical expenses. Because Cook began employment as a nursing assistant at the Renova Center on July 11, 1988, at a higher wage than she had earned at Odd Fellows, the referee determined that benefits would terminate on that date. On appeal, the WCAB affirmed the grant of benefits, but modified the order to suspend, rather than terminate, Cook's benefits as of July 11, 1988. Odd Fellows appeals.[2]

■ To sustain an award under section 301(c)(1) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736 *as amended*, 77 P.S. § 411(1), the claimant must prove a causal relationship between the work-related incident and the alleged disability. Generally, if there is no obvious relationship between the disability and the work-related cause, unequivocal medical testimony is required to meet the burden of proof. *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 508 Pa. 360, 498 A.2d 800 (1985).

■ Odd Fellows contends that Cook has failed to provide the unequivocal medical testimony required to prove a causal connection between the February 11, 1988 incident and her claimed disability from June 8, 1988 through July 10, 1988. Cook counters that because her injury was the immediate, direct and natural result of her employment, the causal link was obvious and the general rule requiring unequivocal medical evidence was not applicable.

2. In a workmen's compensation appeal, this court's scope of review is limited to determining whether constitutional rights have been violated; whether an error of law was committed; or whether any finding of fact necessary to support the decision is not supported by substantial evidence. 2 Pa.C.S. § 704.

In *Morgan v. Giant Markets, Inc.*, 483 Pa. 421, 397 A.2d 415 (1979), our Supreme Court allowed compensation where the claimant failed to produce medical evidence to establish a causal relationship between the work incident and his injury. The claimant experienced severe pain while attempting to unload his truck at work, and immediately reported the incident to his shop foreman. The Supreme Court held that these facts constituted substantial competent evidence to establish the causal connection between the work incident and claimant's injury, even without medical testimony. The court stated:

> Where one is doing an act that requires force or strain and pain is experienced at the point of force or strain, the injury may be found to have been established. Pain is an excellent symptom of an injury. Of course, the trier of fact will determine the credibility of the witness's testimony as to the total situation.

*Id.*, 483 Pa. at 424, 397 A.2d at 416.

In *Sacks v. Workmen's Compensation Appeal Board*, 43 Pa.Commonwealth Ct. 259, 402 A.2d 293 (1979), we relied on the reasoning in *Morgan* and declined to preclude an award of benefits, although the medical testimony presented was not unequivocal. The claimant was a school bus driver for handicapped children who experienced severe pain immediately after he lifted a 140 pound boy into the bus. The court noted that the claimant had no prior history of back trouble, the pain began as soon as he lifted the child, and the incident was reported immediately. Based upon these facts, the court held that the factfinder was not required to depend on medical testimony to find the necessary causal connection.

Similarly, in *Sokol v. Workmen's Compensation Appeal Board (State Regional Correctional Facility)*, 91 Pa.Commonwealth Ct. 396, 497 A.2d 670 (1985), we relied upon *Morgan* to reinstate benefits to a prison guard who experienced sharp pains while bending to conduct a routine pat search of an inmate, which he reported promptly to his supervising officer. We held that the connection between

the activity and claimant's injury was obvious, and medical testimony was not required to establish that which was apparent.

Again, in *Davis v. Workmen's Compensation Appeal Board (United Parcel Service)*, 92 Pa.Commonwealth Ct. 294, 499 A.2d 703 (1985), we determined that unequivocal medical testimony was not required to sustain an award where the claimant suffered a back injury while involved in the sort of heavy work which could cause such an injury.

The circumstances here also warrant reliance on *Morgan*. Cook had no history of back problems, but while bending over and lifting a patient, Cook felt a pull in her back, severe enough to report the incident immediately to her supervisor. However, after reporting the incident, Cook returned to complete her shift, and testified that it was not until about two weeks after the incident occurred that the "real pain started." (28a).

Odd Fellows argues that this time lapse is too great for *Morgan* to control this case. Unlike the cases discussed previously, Odd Fellows asserts that the facts here do not indicate an obvious causal connection between the incident and the injury because Cook's pain was not immediate, and she continued to perform her duties without complaint for four months before seeking medical attention. Therefore, Odd Fellows contends that unequivocal medical testimony is necessary to prove that the incident of February 11, 1988 was the cause in fact of the injury, rather than the type of fleeting twinge of pain experienced by workers everyday. We disagree.

Although the delay in seeking medical care may have weakened the causal chain of events and raised the question of credibility, this did not preclude the referee from finding that Cook suffered a compensable injury.[3] The referee

3. *Cf. Greene County Memorial Hospital v. Workmen's Compensation Appeal Board*, 61 Pa.Commonwealth Ct. 82, 432 A.2d 1166 (1981) (benefits granted to nurse injured while turning bedridden patient, even though she continued to work for several weeks following the incident).

found Cook to be credible, and from her testimony determined that the requisite relationship existed to establish a work-related injury.

Where the referee's findings are supported by substantial evidence, and the WCAB takes no additional evidence, the referee's findings must be accepted. *Universal Cyclops Steel Corp. v. Workmen's Compensation Appeal Board,* 9 Pa.Commonwealth Ct. 176, 305 A.2d 757 (1973). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Andracki v. Workmen's Compensation Appeal Board (Allied Eastern States Maintenance),* 96 Pa.Commonwealth Ct. 613, 508 A.2d 624 (1986). Upon review of the record, we conclude that there is substantial evidence to support the referee's finding that Cook sustained her injury during the course of her employment on February 11, 1988. We affirm that finding.

■ However, this is not the end of our inquiry. Odd Fellows contends that although the injury may have been causally connected to the incident, Cook's alleged disability was not. We agree.

In *Cardyn v. Workmen's Compensation Appeal Board (Heppenstall),* 517 Pa. 98, 534 A.2d 1389 (1987), our Supreme Court distinguished *Morgan.* The court acknowledged that under *Morgan,* experiencing pain was sufficient to establish an "injury"; however, the court explained that the issue in *Cardyn* was "not merely whether claimant was injured, but whether the injury caused him to be disabled; and where the causal connection between the injury and the disability is not obvious, more is required than a claimant's subjective testimony." *Cardyn,* 517 Pa. at 101–102, 534 A.2d at 1390. Because the causal connection between the claimant's fall and injury at work and his subsequent claim for disability was not obvious, *Cardyn* required claimant to introduce competent medical evidence to sustain his burden of proof on the issue.

The distinction between *Morgan* and *Cardyn* is pertinent here. These two cases demonstrate that there is an important difference between an injury and its consequences. That difference controls the outcome in this case.

It is one thing for Cook to contend that she injured her back while lifting a patient at work, but she claims more. Cook asserts that the injury was such that it constituted a disability, preventing her from performing job-related duties at Odd Fellows between June 8, 1988 and July 11, 1988. This connection is far from obvious under the facts of this case. As noted above, after her injury Cook took on additional nursing assistant responsibilities, albeit part-time, and performed those duties throughout the period of her alleged disability. Therefore, Cook must prove the connection between the injury and alleged disability by unequivocal medical evidence.

The question of whether medical testimony is equivocal must be based on the medical testimony as a whole; there are no "magic words" which the doctor need recite to establish causation. *Bethlehem Mines Corp. v. Workmen's Compensation Appeal Board (Plutch)*, 97 Pa.Commonwealth Ct. 346, 509 A.2d 942 (1986). The standards of competency for medical evidence are summarized in *Lewis:*

> Where medical testimony is necessary to establish a causal connection, the medical witness must testify, not that the injury or condition might have or possibly came from the assigned cause, but that in his professional opinion the result in question did come from the assigned cause. *Menarde v. Philadelphia Transportation Co.*, 376 Pa. 497, 103 A.2d 681 (1954). Medical evidence which is less than positive or which is based upon possibilities may not constitute legally competent evidence for the purpose of establishing the causal relationship. *Bisesi v. Workmen's Compensation Appeal Board*, 61 Pa.Commonwealth Ct. 260, 433 A.2d 592 (1981).

*Lewis*, 508 Pa. at 365–66, 498 A.2d at 802.

The only medical evidence Cook offered in this case were the notes and records made by Dr. Zeliger. These doc-

uments show only one mention of Cook's work-related incident, found in an addendum to the doctor's office notes dated June 7, 1988. That addendum states:

> After I dictated this letter, Barbara said could this have come from an injury and I said yes and she told me that she did injure her back at work at the Odd Fellows Home in January and they have the records. She will get me the dates and the information so I can put it in this record. Since that injury, is when her pain started down her leg. She will get me further information.

(80a).

This evidence falls short of that required to establish the connection between the injury of February 11, 1988 and any subsequent disability. Dr. Zeliger stated only that Cook's back pain *could* have resulted from her injury at work, using the type of equivocal language expressly rejected in *Lewis.* However, Dr. Zeliger clearly was reserving any professional opinion on the matter until he received additional information regarding the injury. There is no indication that Dr. Zeliger ever reached any further conclusion, or, indeed, whether Cook ever provided the promised information.

Moreover, we note that, the question of causation aside, there is no indication that Cook actually was disabled.[4] For workmen's compensation purposes, "disability" is equated with a loss of earning power. *Wheeling–Pittsburgh Steel Corp. v. Workmen's Compensation Appeal Board (Smith)*, 70 Pa.Commonwealth Ct. 100, 452 A.2d 611 (1982). Although Cook did not work at Odd Fellows from

[4]. We analogize this to the treatment of occupational disease under section 301(e) of the act, 77 P.S. § 413, under which a claimant, having established that he or she has an enumerated occupational disease, and is employed in an industry in which the particular disease was a hazard, is entitled to the rebuttable presumption that the disease arose out of and in the course of employment. Although the connection between the disease and the employment is presumed, the existence of a disability from the disease is not. Therefore, merely having the disease does not *per se* entitle the claimant to compensation. *Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 142 Pa.Commonwealth Ct. 176, 597 A.2d 182 (1991).

June 8, 1988 through July 10, 1988, she did perform identical tasks at Polyclinic, a position she still retains in addition to her job at Renova. Clearly then, Cook had the physical ability to perform as a nursing assistant throughout this time period; her inability to work at Odd Fellows resulted strictly from her June 13, 1988 termination. Yet, in finding 14 the referee found:

> Defendant did not present any evidence that once the matter was explained by Dr. Zeliger's office there was no attempt to make work available to the claimant. Therefore the referee finds as a fact that claimant is entitled to workers' compensation benefits for the period June 8, 1988 through and including July 10, 1988.

It is true that Odd Fellows did not make suitable work available to Cook after speaking to Dr. Zeliger; however, this was not because it refused to do so. On the contrary, the record shows that Ms. Leonard specifically requested Cook to find out what medical limitations, if any, her condition required. (Finding 13). However, Cook failed to act upon this request and, indeed, never returned to work. Because Cook failed to contact her employer, Odd Fellows had no reason to find suitable work for her. By the time Odd Fellows learned about Cook's need for work restrictions, it made little difference because it considered her to have voluntarily terminated her employment.[5]

Based upon our review of the whole record in this case, we disagree with the WCAB that Cook has sustained her burden of proving that she was totally disabled from June 8, 1988 until June 11, 1988 as a result of the work-related injury she sustained on February 11, 1988. Therefore, we reverse the grant of disability benefits for this period.[6]

5. As previously noted, Cook's voluntary resignation came as a result of her violation of employment policy. Cook does not dispute her violation of this policy or her knowledge of its existence (33a–35a).

6. By refusing to grant benefits for this period, we are not rejecting the possibility of a future compensable claim for disability based upon Cook's February 11, 1988 injury. We recognize the legislature's intent, expressed in section 413 of the act, 77 P.S. § 772, to permit either party to reevaluate the question of compensability based on a change

Odd Fellows also argues that the referee erred in determining that Cook was entitled to an award for reimbursement of medical expenses pursuant to section 306(f) of the act, 77 P.S. § 531. Although we hold that Cook has failed to prove a disability, the denial of disability benefits is not inconsistent with an award for medical expenses incurred for treatment of a work-related injury. *McMahon v. Workmen's Compensation Appeal Board,* 135 Pa.Commonwealth Ct. 1, 581 A.2d 678 (1991). An employee is not required to show that an injury resulted in loss of earnings to permit receipt of reimbursement for medical expenses. *Deremer v. Workmen's Compensation Appeal Board,* 61 Pa.Commonwealth Ct. 415, 433 A.2d 926 (1981). As subsection 4 of section 306 of the act provides:

[T]he employer shall provide payment for medicines and supplies, hospital treatment, services and supplies and orthopedic appliances and prostheses.... The provisions of this section shall apply in injuries whether or not loss of earning power occurs.

77 P.S. § 531.

For the above reasons, we affirm the order of the WCAB to the extent that it entitles Cook to reimbursement of medical expenses incurred as a result of her injury of February 11, 1988, but reverse the WCAB's award of disability benefits.

## ORDER

The order of the Workmen's Compensation Appeal Board is affirmed in part and reversed in part, in accordance with the accompanying opinion.

in the disability of an injured employee. *See, e.g., Hebden, Petcovic v. Workmen's Compensation Appeal Board (St. Joe Zinc),* 125 Pa.Commonwealth Ct. 110, 557 A.2d 57 (1989), *appeal denied,* 525 Pa. 665, 583 A.2d 795 (1990); *Fields v. Workmen's Compensation Appeal Board (Duquesne Light Co.),* 114 Pa.Commonwealth Ct. 645, 539 A.2d 507 (1988), *appeal denied,* 520 Pa. 599, 552 A.2d 253 (1988); *Sullivan Trail Manufacturing Co. v. Workmen's Compensation Appeal Board (Wetzel),* 80 Pa.Commonwealth Ct. 144, 471 A.2d 151 (1984) (cases holding that a denial of a claim petition for an occupational disease at one point does not preclude a claimant from filing a claim petition at a later date based upon a worsening of the claimant's condition).