Charles YOUNG, Deceased, Arlene
Young, Widow, Petitioner

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (ZINC CORPORA-
TION OF AMERICA), Respondent.

Commonwealth Court of Pennsylvania.

Submitted Jan. 27, 2006.

Decided April 5, 2006.

Daniel K. Bricmont, Pittsburgh, for peti-
tioner.

Christopher L. Wildfire, Pittsburgh, for
respondent.

BEFORE: SMITH–RIBNER, Judge,
and LEADBETTER, Judge, and
McCLOSKEY, Senior Judge.

OPINION BY Judge LEADBETTER.

Arlene Young petitions for review of the order of the Workers' Compensation Appeal Board (Board), which affirmed the denial of her husband's pre-mortem claim petition and her fatal claim petition. Young asserts that the Board and the Workers' Compensation Judge (WCJ) erred as a matter of law in failing to adjudge Zinc Corporation of America (ZCA) liable for benefits, where there exists no dispute that her husband, Charles Young, died from an asbestos-related cancer within 300 weeks of exposure while working for ZCA. We agree and, therefore, reverse.

Charles Young, a bricklayer, retired from ZCA in February of 2001, and shortly after, in June of 2001, was diagnosed with mesothelioma. On July 23, 2001, Young filed a claim petition asserting that he acquired the cancer from his workplace exposure to asbestos. Young died in April of 2002, and approximately one month after his death, his widow, Arlene Young, filed a fatal claim petition. For ten years, from 1991 until February of 2001, Young worked for ZCA as a bricklayer foreman. Prior to employment with ZCA, Young worked as a bricklayer for four different employers. The parties do not dispute that, while working for each employer over his approximately forty-five year career, Young encountered exposure to asbestos and they do not dispute that exposure to asbestos caused the fatal cancer. The parties' dispute centers on whether Young's exposure to asbestos at ZCA, which company documents establish occurred as late as 1997, caused or contributed to Mr. Young's cancer. On the issue of causation, each party introduced conflicting competent expert medical testimony. The experts generally agreed that the type of cancer that afflicted Mr. Young develops after a typical latency period of twenty to forty years. Nevertheless, the two physicians who testified on behalf of Mrs. Young opined that exposure at the ZCA workplace contributed to Mr. Young's disease. The four physicians who testified on behalf of ZCA agreed that, given the latency period, only exposure prior to employment by ZCA caused Mr. Young's cancer.

The WCJ deemed ZCA's experts more persuasive and found that asbestos exposure prior to employment by ZCA in 1991 caused Mr. Young's disease. Based on this finding, the WCJ concluded that Mrs. Young failed to sustain her burden to prove ZCA liable for benefits. The WCJ specifically rejected Mrs. Young's argument that, under *School District of Philadelphia v. Workmen's Compensation Appeal Board (Polk)*, 163 Pa.Cmwlth. 201, 640 A.2d 502 (1994) and *Marcucci v. Workmen's Compensation Appeal Board (B.P. Oil Co.)*, 98 Pa.Cmwlth. 7, 510 A.2d 1262 (1986), her husband's death from an asbestos-related cancer after exposure to asbestos at ZCA established as a matter of law her right to prevail on the claim without proof that a particular moment or period of exposure at ZCA actually triggered the cancer. The WCJ denied the claim. Thereafter, Mrs. Young appealed to the Board, reasserting her argument regarding causation and contending that the WCJ erred in denying both the lifetime [1] and the fatal claim petitions.

The Board agreed with the WCJ that *Polk* and *Marcucci* could be distinguished on the ground that, in those cases, claimant suffered from a disease caused by cu-

---

1. While the Board, in footnote 2 of its opinion, states that the denial of the lifetime claim "is not an issue on appeal," Mrs. Young's appeal to the Board explicitly challenged the WCJ's conclusion of law number 2, ruling that the lifetime claim must be denied because Young had retired prior to diagnosis and, therefore, sustained no earnings loss.

mulative exposure to asbestos where, in the present case, credited medical experts agreed as to the period of exposure that caused or contributed to Mr. Young's disease. The Board recognized that, under Section 301(e) of the Workers' Compensation Act (Act),[2] 77 P.S. § 413, Mr. Young's death from asbestos-related cancer, an "occupational disease" listed in Section 108 of the Act,[3] coupled with his employment in an occupation in which asbestos is an acknowledged hazard gives rise to a rebuttable presumption "that [Young's] occupational disease arose out of and in the course of his employment." However, the Board concluded that the evidence relied upon by the WCJ rebutted this presumption with respect to ZCA. Based on these conclusions, the Board affirmed. Mrs. Young then filed the present appeal, again contending that both the lifetime and fatal claims must be granted based on the undisputed fact that her husband suffered and died from an asbestos-related cancer following workplace exposure to asbestos at ZCA.

 Section 301(c)(2) establishes a right to benefits under the Act for disability or death from occupational disease, as follows:

The terms "injury," "personal injury," and "injury arising in the course of his employment," as used in this act, shall include, unless the context clearly requires otherwise, occupational disease as defined in section 108 of this act: Provided, That whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment in an occupation or industry to which he was exposed to the hazards of such disease: And provided further, That if the employe's compensable disability has occurred within such period, his subsequent death as a result of the disease shall likewise be compensable. The provisions of this paragraph (2) shall apply only with respect to the disability and death of an employe which results in whole or in part from the employe's exposure to the hazard of occupational disease after June 30, 1973 in employment covered by [the Act]. The employer liable for compensation provided by section 305.1 or section 108, subsections (k), (l), (m), (o), (p) or (q), shall be the employer in whose employment the employe was last exposed for a period of not less than one year to the hazard of the occupational disease claimed. In the event the employe did not work in an exposure at least one year for any employer during the three hundred week period prior to disability or death, the employer liable for the compensation shall be that employer giving the longest period of employment in which the employe was exposed to the hazards of the disease claimed.

77 P.S. § 411(2).

In *Marcucci*, just as in the present case, the claimant's husband died of mesothelio-

---

**2.** The Workers' Compensation Act is the Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1—1041.4, 2501—2626. Section 301(e) was added by the Act of October 17, 1972, P.L. 930.

**3.** Section 108 was added by the Act of October 17, 1972, P.L. 930, *as amended*, 77 P.S. § 27.1 and provides, in pertinent part:

The term "occupational disease," as used in this act, shall mean only the following diseases.

. . .

(l) Asbestosis and cancer resulting from direct contact with, handling of, or exposure to the dust of asbestos in any occupation involving such contact, handling or exposure.

ma, which developed after many years of asbestos exposure while working for various employers. Claimant's medical expert and the appointed impartial physician agreed that the "lag time" for developing mesothelioma averages thirty years. Based on the accepted period between asbestos exposure and disease manifestation, the experts agreed that the exposure to asbestos encountered by claimant's decedent during his employment with the defendant could not have caused or contributed to the cancer. The referee and the Board concluded, given the expert agreement, that the death in January of 1975 following diagnosis in July of 1974 could not be attributed at all to workplace exposure after June 30, 1973, the critical date under Section 301(c)(2) of the Act for establishing the compensability of the disease.[4] In reversing the denial of benefits, our court rejected the premise that a claimant must prove that exposure after June 30, 1973 caused or contributed to disability or death. The *Marcucci* court stated, "nor could such a ruling be sensibly made in light of the improbability in occupational disease cases of pinpointing the precise period or time in a long-term exposure when in a cancer case the 'hit' or onset of malignancy or the metastasis began or became terminal." 510 A.2d at 1265.

In *Polk,* the claimant's husband died of undifferentiated asbestos-related metastatic lung cancer after working for approximately twenty years in jobs exposing him to asbestos inhalation. Presented with conflicting medical testimony as to whether exposure at the last place of employment or, given a latency period of 10 to 35 years, an earlier exposure caused the cancer, the referee, persuaded by employer's

experts, denied benefits. The referee concluded that, inasmuch as the persuasive evidence established that the critical exposure occurred prior to exposure at the defendant's workplace, the claimant failed to meet her burden to show causation. On appeal, the Board reversed and remanded. Following the award of benefits on remand, employer appealed to our court, challenging the Board's application of *Marcucci* on the ground that there the dispositive issue concerned the requirement that exposure occur after June 30, 1973, while the issue in *Polk* concerned whether, in view of the latency period, exposure at the last employer caused the fatal cancer. However, the *Polk* court did not find this distinction relevant and, rather, concluded that, as in *Marcucci,* the issue concerned the interpretation and application of Section 301(c)(2) where testimony tended to establish a critical exposure period prior to work at the last place of employment. *Polk,* 640 A.2d at 506. The *Polk* court concluded that the general premise stated in *Marcucci* still applied, to wit, "that a specific 'hit,' or fixed injury, has no place in the occupational disease process, but is tantamount to requiring proofs which were necessary under the pre–1972 era when an accidental injury was required." *Marcucci,* 510 A.2d at 1266.

For specified occupational diseases, such as asbestos-related cancer, Section 301(c) assigns employer liability based not on the ascertainment of a specific morbidity trigger date or period but based generally on the period of latest exposure within the 300–week period pre-dating disease manifestation. Specifically, Section 301(c)(2) directs that the employer liable for compensation provided by Section 108(*l*) (as-

---

4. The *Marcucci* court stated that the June 30, 1973 date is "jurisdictional to establish a compensable occupational disease under Section 108(*l*) of the Act, but we do not believe proof of the significance of such jurisdictional exposure is required." 510 A.2d at 1265.

bestos-related disease and cancer) shall be the employer where occurred the last exposure of at least one year duration during the 300–week period. If a one-year exposure did not occur with any employer during the 300–week period prior to disability or death, Section 301(c)(2) assigns liability to the employer giving the longest period of workplace exposure during the 300–weeks prior to disability or death. *See Barna v. Workmen's Comp. Appeal Bd. (Rochester & Pittsburgh Coal Co.)*, 103 Pa.Cmwlth. 536, 520 A.2d 1234 (1987) (holding that the look back for an employer giving the longest exposure period does not extend beyond the 300–week disease manifestation period established under the Act).

In the present case, the statutory assignment of liability renders ZCA the only employer upon which liability can fall because ZCA was the only site of workplace exposure, albeit briefly,[5] during the 300–week manifestation period. *See Hoosier Eng'g Co. v. Workmen's Comp. Appeal Bd. (Winters)*, 153 Pa.Cmwlth. 229, 620 A.2d 697, 700 (1993) [citing *Adams Steel Erection, Inc. v. Workmen's Comp. Appeal Bd.*

*(Klavonick)*, 117 Pa.Cmwlth.290, 543 A.2d 241, 245 (1988).] While the statutory assignment of liability, like the "last injurious exposure rule,"[6] may be at odds with traditional causation proof in long latency period cases, the legislature, in assigning liability to a later employer, enacted as a matter of policy a scheme of liability that appears designed to equitably spread liability for occupational disease within an industry. Thus, we conclude that, following the statutory scheme of liability assignment, ZCA is the liable employer.

The WCJ denied Mr. Young's lifetime claim based, in part, on his admitted lack of earnings loss.[7] Mr. Young did testify that he voluntarily retired prior to his diagnosis and, therefore, the WCJ appropriately refused to award weekly compensation benefits. However, Mr. Young's claim includes recovery for medical expenses associated with his cancer and, in view of our ruling herein, ZCA is liable for those expenses. Despite language in the Act and case law generally stating that eligibility for compensation depends upon proof of disability, which is synonymous

5. Although Young worked for ZCA for ten years, according to company records, his exposure during asbestos removal activities amounted to a total 21 hours. Mr. Young testified that, in addition, he encountered airborne asbestos at other times when the material was stirred up by construction activity nearby.

6. *Al's Radiator Serv. v. Workmen's Comp. Appeal Bd. (Jorden's Radiator Serv.)*, 157 Pa. Cmwlth. 432, 630 A.2d 485 (1993) (ruling that for those occupational diseases not specified in Section 301(c)(2) as subject to the statutory assignment of liability the "last injurious exposure rule applies" and, stating that, "[u]nder the last injurious exposure rule, when an employee becomes disabled or dies from an occupational hazard attributable to successive exposures during employment, the employer

liable will be the last employer responsible for exposure to the hazard").

7. ZCA contends that the absence of earnings loss was conceded not only by Mr. Young in his testimony but also by Mrs. Young in her proposed findings of fact submitted to the WCJ. ZCA attached to its brief, as Exhibit C, a copy of these proposed findings. In response, Mrs. Young requested in a reply brief that we strike Exhibit C because the proposed findings were never made a part of the certified record. It is well-established that our review is limited only to the material contained in the certified record and, therefore, we will not consider Exhibit C and grant the request to strike this exhibit. Moreover, the concession in Exhibit C that Young incurred no earnings loss is irrelevant to our determination that he is nevertheless entitled to the payment of medical expenses.

with earnings loss, our court has clarified that a claimant suffering from an occupational disease is entitled to payment of reasonable and necessary medical expenses regardless of whether the disease has caused earnings loss. *City of Phila. v. Workers' Comp. Appeal Bd. (Cospelich)*, 893 A.2d 171, 178 (Pa.Cmwlth.2006) [quoting *Odd Fellow's Home of Pa. v. Workmen's Comp. Appeal Bd. (Cook)*, 144 Pa. Cmwlth. 280, 601 A.2d 465, 471 (1991) and citing *Canestrale v. Workmen's Comp. Appeal Bd. (Wheeling Pittsburgh Steel)*, 160 Pa.Cmwlth. 361, 634 A.2d 841 (1993)]. For this reason, the WCJ erred in denying Young's lifetime petition based on the absence of lost earnings.

 Finally, Young maintains that the presumption set forth in Section 301(e) applies to the present claims and that the Board erred in concluding that ZCA effectively rebutted the presumption. Section 301(e) provides:

> If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

77 P.S. § 413.

This presumption does not go to establishing which exposure, during a lifetime career of exposure, actually triggered disease; rather, the presumption establishes that generally, where workplace exposure occurred, this as opposed to non-workplace exposure caused the disease. However, here, it was not disputed that Young's cancer was caused by his employment. Rather, ZCA argued only that the cancer was caused by earlier periods of employment with other companies and did not attempt to rebut the Section 301(e) presumption with evidence establishing that some non-workplace exposure caused Young's mesothelioma. Accordingly, we agree that the presumption was not rebutted, but since a specific morbidity trigger date is not a critical element of proof in an occupational disease case, we find this to be of no moment.

We reverse and remand for the calculation and award of benefits.

### ORDER

AND NOW, this 5th day of April, 2006, the order of the Workers' Compensation Appeal Board in the above captioned matter is hereby REVERSED and this matter is REMANDED for the calculation and award of benefits.

*Jurisdiction is relinquished.*